[Cite as *State v. Parsons*, 2011-Ohio-168.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  2-10-27

    v.

KEITH PARSONS,                      O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2010-CR-0023**

**Judgment Affirmed**

**Date of Decision:  January 18, 2011**


**APPEARANCES:**

    *Gerald F. Siesel*  **for Appellant**

    *Edwin A. Pierce*  **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Keith Parsons (hereinafter "Parsons"), appeals the Auglaize County Court of Common Pleas' judgment of sentence. For the reasons that follow, we affirm.

{¶2} The facts relevant to this appeal are as follows. In February of 2010, the Grand Lake Task Force ("the task force") was told by an informant that Parsons was manufacturing methamphetamines in his home in St. Mary's, Ohio, and that the smell from this process could be detected upon opening the front door to the home. Officers from the task force decided to drive past the home, and after observing that the lights in the home were on, they decided to knock on the door and speak with the occupants. A woman answered the door, stated that she was not the owner of the home, and went to get the owner. Parsons came to the door but immediately attempted to shut it upon learning that the people at his door were law enforcement officials. Eventually, Parson's live-in girlfriend, Chera York ("York"), came to the door and spoke with the officers. York informed the officers that there were no drugs in the home and denied that methamphetamines were being manufactured in her home. York also denied the officers access to her home, absent a search warrant, when they asked if they could look inside the home. York further told the officers that her two children were in the home, as

were her friend's two children. The officers did not detect the odor of any chemicals coming from the home, and they left.

{¶3} Several days later, the task force learned that Parsons had an active warrant for his arrest. Once they confirmed that Parsons was home, officers from the St. Mary's Police Department arrived and arrested him. This time, the officers noticed the smell of ammonia. After Parsons was removed from the home and taken to jail, York spoke with the officers, as did her father, who lived next door. York consented to a search of her home. In the basement, the officers noticed that the ammonia odor was stronger, and they observed several items commonly used in the manufacture of methamphetamines. After York expressed concern about allowing them to continue searching, the officers decided to attempt to obtain a search warrant. York then informed them that Parsons smoked methamphetamines and was addicted to the drug. The officers advised York that she should take her children to her parents' home for safety reasons, and York agreed.

{¶4} The officers obtained the search warrant for Parson's home. During this search, officers found drugs and drug paraphernalia. The officers also located a drain in the home that contained a substance that was off-gassing ammonia. The presence of this substance in the drain, along with the nature of the paraphernalia

found in the home, indicated to the officers that methamphetamines were being manufactured in the home.

{¶5} Parsons later admitted that he was manufacturing methamphetamines in his home. The investigation further revealed that throughout the course of time that Parsons was manufacturing methamphetamines in his home, three children, ages four, nine, and ten, were present in the home and within 100 feet of these materials.

{¶6} On March 16, 2010, Parsons was indicted on three counts: Count I – Illegal assembly or possession of chemicals for the manufacture of drugs, specifically methamphetamines, in violation of R.C. 2925.041(A), (C)(1), a felony of the third degree; Count II – Illegal manufacture of drugs, specifically methamphetamine, in the vicinity of a juvenile in violation of R.C. 2925.04(A), (C)(3)(b), a felony of the first degree; and Count III – Endangering children in violation of R.C. 2919.22(B)(6), a felony of the third degree. Parsons initially entered pleas of not guilty on all three counts.

{¶7} On April 30, 2010, following pre-trial negotiations, Parsons withdrew his previously tendered plea of not guilty as to Count I and pleaded guilty to that same count. In addition, Parsons pled guilty to one count contained in a bill of information against him of endangering children in violation of R.C.

2919.22(B)(6).[1]   In exchange, the State dismissed Counts II and III of the indictment.  The State further indicated on the record that at the time of sentence it would be requesting a prison sentence of four years, which would be a mandatory sentence, on Count I and five years on the count contained in the bill of information, which was not a mandatory sentence, and would ask that the sentences be served consecutively to one another for an aggregate sentence of nine years.  After conducting a plea colloquy with Parsons, including informing him of the potential sentences for the two offenses to which he was pleading guilty, the trial court accepted his pleas of guilty and ordered a pre-sentence investigation ("PSI").

{¶8}   On June 21, 2010, the sentencing hearing was held.  At that time, the trial court informed Parsons that it had failed to advise him of the proper sentence for a violation of R.C. 2919.22(B)(6), endangering children, when the drug involved is methamphetamine.  The court then informed Parsons that it was required to impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree that is not less than two years, which meant that the court had to sentence him to prison on that count for two, three, four, or five years.  Noting that Parsons was not properly advised of the mandatory nature of the

---

[1] The count of child endangering contained in the bill of information was based upon the same facts as Count III of the indictment.  However, Count III of the indictment omitted the requisite mental state for the offense.  Thus, the bill of information was prepared in accordance with the plea negotiations and contained the requisite mental state for the offense.

sentence and that the minimum term of imprisonment was two rather than one year as indicated at the change of plea hearing, the trial court informed Parsons that he could withdraw his pleas of guilty if he so desired. Parsons declined. The trial court made further inquiry as to whether Parsons was making this choice freely, voluntarily, and without being threatened or otherwise intimidated in any way and further advised Parsons of the minimum and maximum penalties for the two offenses. Parsons indicated that he understood what he was being told and that he wanted to proceed to sentencing on the charges to which he previously pled guilty.

{¶9} During sentencing, the prosecution stated that in light of the fact that both sentences were mandatory, it was changing its prior recommendation from a request of four years on Count I and five years on the count contained in the bill of information to be served consecutively for an aggregate of nine years to a request of three years on Count I and two years on the count contained in the bill of information to be served consecutively to one another for an aggregate of five years. In so doing, the prosecutor stated that, originally, it was her intent to have Parsons serve five years in prison and then have four years of supervision. However, because of the mandatory and minimum prison term that had to be given to Parsons for this type of child endangering offense, the prosecutor's original intentions were no longer possible. This statement then prompted the trial court to

further explain post-release control to Parsons and to ask whether he understood this supervision as well, which he indicated that he did.

{¶10} Following the State's sentencing recommendation, counsel for Parsons and Parsons, himself, were permitted to present mitigation. As Parsons was addressing the trial court, the court asked several questions of him, including questions about Parsons' criminal history that were noted in the PSI. Parson stated that he was not convicted or even charged with a number of the offenses noted in the PSI, and his father, who was present at the hearing, informed the court that some of those charges may have been his.

{¶11} At the conclusion of Parsons' presentation, the trial court sentenced him to four years of imprisonment on Count I of the indictment and three years of imprisonment on the count contained in the bill of information. The court further ordered that these sentences be served consecutively for an aggregate, mandatory prison term of seven years.

{¶12} Parsons now appeals raising one assignment of error for our review.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT'S SENTENCE OF THE DEFENDANT-APPELLANT TO MANDATORY CONSECUTIVE SENTENCES TOTALING SEVEN YEARS WAS CONTRARY TO LAW AND FURTHER CONSTITUTED AN ABUSE OF DISCRETION IN FAILING TO PROPERLY CONSIDER AND APPLY THE FELONY SENTENCING GUIDELINES SET FORTH IN R.C. 2929.11 AND 2929.12.**

{¶13} In his sole assignment of error, Parsons asserts that the trial court's sentence is contrary to law because the record demonstrates that the trial court failed to consider R.C. 2929.11 and R.C. 2929.12 in rendering its sentence. Parsons further maintains that the trial court abused its discretion in sentencing him to an aggregate term of seven years in prison because the record does not support the trial court's decision.

{¶14} A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record; the sentencing statutes' procedure was not followed, or there was not a sufficient basis for the imposition of a prison term; or that the sentence is contrary to law.[2] *State v. Ramos*, 3rd Dist. No. 4-06-24, 2007-Ohio-767, ¶ 23 ("the clear and convincing evidence standard of review set forth under R.C. 2953.08(G)(2) remains viable with respect to those cases appealed under the applicable provisions of R.C. 2953.08(A), (B), and (C)"); *State v. Rhodes*, 12th Dist. No. CA2005-10-426, 2006-Ohio-2401, ¶ 4; *State v. Tyson*, 3rd Dist. Nos. 1-04-38, 1-04-39, 2005-Ohio-1082, ¶ 19, citing R.C. 2953.08(G). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a

---

[2] We note that the Supreme Court of Ohio recently released a plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, which established a two-part test utilizing both the clear and convincing and abuse of discretion standard of review in reviewing felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing standard of review, which was affirmed and adopted by three dissenting Justices in *Kalish*, we note that the outcome of our decision in this case would be identical under the *Kalish* plurality's two-part test as well.

firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus; *State v. Boshko* (2000), 139 Ohio App.3d 827, 835, 745 N.E.2d 1111. An appellate court should not, however, substitute its judgment for that of the trial court because the trial court is "'clearly in the better position to judge the defendant's likelihood of recidivism and to ascertain the effect of the crimes on the victims.'" *State v. Watkins*, 3rd Dist. No. 2-04-08, 2004-Ohio-4809, ¶ 16, quoting *State v. Jones*, 93 Ohio St.3d 391, 400, 2001-Ohio-1341, 754 N.E.2d 1252, abrogated by *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1.

{¶15} Parsons correctly asserts that a trial court must consider R.C. 2929.11 and R.C. 2929.12 when sentencing a felony offender. *Mathis*, 2006-Ohio-855, at ¶ 38. A sentence imposed without any consideration given to these statutes is contrary to law. See *Kalish*, 2008-Ohio-4912 at ¶¶ 13, 18. When the record is silent concerning the trial court's consideration of these sentencing statutes, it is presumed that the trial court considered them. *Id*. at ¶ 18, fn. 4, citing *State v. Adams* (1988), 37 Ohio St.3d 295, 297-98, 525 N.E.2d 1361. Furthermore, the trial court is not required to either discuss the factors on the record or even to state that the factors were considered on the record, as long as the record is sufficient for a court to determine that the consideration occurred.

*State v. Ditto*, 3rd Dist. No. 12-09-08, 2010-Ohio-1503, ¶ 4, citing *State v. Scott*, 3rd Dist. No. 6-07-17, 2008-Ohio-86.

{¶16} In the case sub judice, the trial court did not state at the sentencing hearing that it had considered R.C. 2929.11 and R.C. 2929.12 or otherwise state that it had considered the relevant sentencing statutes or factors. However, in its judgment entry, the trial court stated,

> **[t]he Court has considered the record, oral statements, any Victim Impact Statement and Pre-Sentence Report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code §2929.11, and has balanced the seriousness and recidivism factors under Ohio Revised Code §2929.12.**

(Judg. Entry, 6/21/10). Given this statement, we find that the record sufficiently demonstrates that the trial court considered both R.C. 2929.11 and R.C. 2929.12 as required. Additionally, both offenses *required* that the trial court impose a prison term of two, three, four, or five years. See R.C. 2925.041(C)(1), 2919.22(E)(3)(a), 2929.14(A)(3). Thus, the sentence for Count I of the indictment of four years and the sentence for the count contained in the bill of information of three years were well within the statutory range. Furthermore, we note that the PSI revealed that Parsons had at least one prior conviction, if not more than one given the questions raised at the sentencing hearing regarding the accuracy of the PSI, and was engaging in a highly dangerous and unstable activity in his home when three young children were present; manufacturing methamphetamines in one's home

places anyone in the home in grave danger as any action that would have disturbed this volatile process had the potential to be catastrophic. Thus, the record amply supports the trial court's sentence in this case, and Parsons has failed to show by clear and convincing evidence that his sentence was contrary to law.

{¶17} Accordingly, Parsons' sole assignment of error is overruled.

{¶18} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

{¶19} I concur fully with the majority opinion, however write separately to emphasize that the appropriate standard of review was applied. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellate courts require appellants to meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[3] For example, if the sentencing court imposed consecutive sentences, as in this case, the standard of review would

---

[3] Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.

be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon the proper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[4]

{¶20} In his assignment of error, Parsons' alleges that his sentence is contrary to law because the trial court did not indicate that it considered the factors set forth in R.C. 2929.11 and R.C. 2929.12 at sentencing. Parsons does not argue that the trial court incorrectly applied the factors set forth in R.C. 2929.12(B), which would require a review using an abuse of discretion standard. Instead, Parsons alleges that the factors were not considered at all. The abuse of discretion standard is only used in cases in which the appellant challenges *how* the factors were applied, not *if* they were applied. Thus, the clearly and convincingly standard used to review this case, as set forth in R.C. 2953.08(G)(2) is the proper standard of review herein.

---

[4] Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.