[Cite as *State v. Combs*, 2014-Ohio-497.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99852

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STEVEN COMBS

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556125

**BEFORE:** Blackmon, J., Boyle, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 13, 2014

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mary H. McGrath
William Leland
Blaise D. Thomas
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Steven Combs ("Combs") appeals his guilty plea to aggravated murder, aggravated burglary, felonious assault, kidnapping, and having a weapon while under disability. He assigns nine errors for our review.[1]

{¶2} Having reviewed the record and relevant law, we affirm the trial court's decision. The apposite facts follow.

## Facts

{¶3} On December 5, 2011, the Cuyahoga Country Grand Jury indicted Combs on the following nine counts: two counts of aggravated murder with felony murder specifications, two counts of aggravated burglary, one count of aggravated robbery, one count of felonious assault, and two counts of kidnapping. All of these counts also contained firearm and repeat violent offender specifications, and notice of prior conviction. Combs was also indicted for having a weapon while under disability.

{¶4} At defense counsel's request, competency evaluations were conducted on Combs, and the trial court accepted the doctor's conclusion that Combs was competent to stand trial. Combs entered a guilty plea to all counts of the indictment. However, because the charges carried the possibility of death as punishment, a hearing was conducted before a three-judge panel to determine Combs's guilt on each charge. The following evidence was presented.

---

[1]See appendix.

**{¶5}** The morning of August 2, 2011, Jeffrey Mechling ("Mechling") was asleep with his girlfriend Dawn Kalal ("Kalal") at his residence located on Walton Avenue in Cleveland, Ohio. Kalal was awoken by the sound of gunshots. When she looked at Mechling, she saw he was bleeding from the face and head. She saw a person wearing a jacket and a "scream" face mask standing at the end of the bed. The person then put the gun in his waistband and pulled out a knife with a blade over a foot long and began to brutally stab Mechling. An autopsy revealed that Mechling did not die from the two gunshots to the head, but by the subsequent stab wounds.

**{¶6}** The masked man then pulled Kalal from the bed and put the knife to her neck, telling her that if she told anyone he would kill her and her child. He then forced her into the kitchen where he showed her that he took money from her purse. He said it was to make it look like a robbery, even though it was a "hit." He also went through Mechling's wallet. He then took Kalal's cellphone and took a picture of her face. He returned to the bedroom, put the knife through Mechling's neck, and took a picture with the cellphone.

**{¶7}** Kalal stated that she had never met Combs, but knew that he was dating Mechling's former girlfriend, Karen Fleming. She described the assailant as about three inches taller than her height of 5'2" and that by looking at his hands, she could see that he was white.

**{¶8}** Joshua Nally testified that he and Combs had been neighbors for several years. After the murder, Nally and his wife invited Combs and his girlfriend, Karen Fleming, over for dinner. Prior to this, Nally was aware that Combs was angry at a man

for pointing a shotgun at Fleming. At the dinner, Combs told Nally that he had killed that man he was angry with. He described how he entered the man's home by cutting the screen. He also told him he wore a mask and a hoody and stabbed him with a "pig sticker." Combs also told Nally that the man's girlfriend saw the whole thing and that he threatened to kill her if she told. He told Nally that he took things so that it looked like a robbery. According to Nally, Combs told him he put the mask, gun, knife, and bloody clothes in a bag and had a friend bury it "ten feet" with a bulldozer. After dinner, Combs became angry with Nally and warned him that "snitches get their house burned down with their kids inside."

{¶9} Karen Fleming testified that she was Combs's girlfriend. She admitted that she had a prior addiction to heroin and alcohol. She stated prior to the murder, she had argued with Mechling at his home and that Combs was with her. She stated she and Combs eventually left to get drunk. She stated that evening, she and Combs argued. As a result, Combs hog-tied her because he did not want her to leave. She was eventually able to get untied and called a friend to pick her up outside the home.

{¶10} The next morning she went back to Combs's house to get some clothes. While there she observed him place a "scream" mask, a gun, a pink cellphone or cellphone case, and a marshal arts jacket in a black garbage bag. He gave the bag to Vincent Labriola ("Labriola"), a friend of Combs's. She also saw him give Labriola a big knife that Combs referred to as a "Puerto Rican pig sticker." Eventually, Combs admitted to her that he killed Mechling after she saw the news of the murder on the television.

{¶11} Robert Shue corroborated Fleming's testimony that Combs gave Labriola a black garbage bag as he saw the men in Combs's driveway, when he came to buy some marijuana from Combs.

{¶12} Vincent Labriola testified that Combs used to work for him. He admitted he was a codefendant with Combs in an unrelated arson case. He stated that Combs gave him a black garbage bag and a sword. Labriola disposed of the items because Combs told him that he used the items when he murdered a "Puerto Rican." Labriola drove to Summit County where he threw the clothing and mask into a garbage can. He threw the gun into a swamp. He kept the sword because it was too big to dispose of. He eventually gave the sword to police. Dr. Gilson, the medical examiner for Cuyahoga County, concluded that could have caused some of the wounds to the body.

{¶13} Christine Scott, a DNA analyst for the Cuyahoga County Medical Examiner's Office, examined the evidence recovered from the crime scene. Scott testified that Combs could not be excluded as a minor contributor of DNA found on a cellphone at the scene. She also stated that Combs and Mechling could not be excluded as possible contributors to a DNA mixture found on Mechling's wallet.

{¶14} Detective Ignatius Sowa testified that while interviewing people at the scene, he learned there was animosity between Combs and Mechling. He took Karen Fleming's statement; she told him about observing Combs putting items used during the murder in a bag and give the bag to Labriola. The detective then contacted Labriola, who cooperated, once he was told he could be implicated in the murder. A recording of Detective Raymond Diaz's interview with Combs was played. Combs denied

committing the murder during the interview, but surmised that maybe someone killed Mechling out of revenge.

{¶15} Two deputies in charge of transporting Labriola from his cell to the court testified that they witnessed Combs attempt to apologize to Mechling's sister, who was sitting in the courtroom.

{¶16} The three-judge panel concluded that Combs was guilty of each charge beyond a reasonable doubt. The matter then moved to the mitigation phase, where Combs prohibited his attorneys from presenting any mitigation evidence. At sentencing, the panel concluded the mitigating factors outweighed the aggravating factors, and sentenced Combs to life in prison without the possibility of parole.

## Maximum Fine

{¶17} In his first assigned error, Combs argues the trial court erred by failing to advise him of the maximum possible fine for aggravated murder when he pled to Count Two.

{¶18} This court recently addressed this identical argument in *State v. Simmons*, 8th Dist. Cuyahoga Nos. 99513 and 100552, 2013-Ohio-5026, and held as follows:

> With respect to the trial court's omission to notify Simmons of the possible fines and court costs, because the trial court never actually imposed the fines or court costs, Simmons cannot show that he would not have entered the plea. Simmons received the incarceration penalty within the range of what the trial court informed him was possible at sentencing, including the mandatory three-year term of postrelease control on the felonious assault count. Further, this court has consistently held that a trial court's failure to inform the defendant of the maximum penalty aside from the fines and costs satisfies the court's obligation pursuant to Crim.R. 11(C)(2) when the court does not impose any monetary punishments. *Flagg*, 8th Dist. Cuyahoga Nos. 93248 and 93279, 2010-Ohio-4247, ¶ 33; *State v. Smith*, 8th Dist. Cuyahoga No. 36588, 1977 Ohio App. LEXIS 8585, (Dec. 8, 1977).

*Id.* at ¶ 7.

{¶19} Here, Combs's sentence did not involve the imposition of a fine on Count Two. In fact, Count Two was merged into Count One at sentencing. Therefore, Combs cannot show that the court's failure to advise him of the fine prejudiced him.

{¶20} We note that Combs relies on this court's decision in *State v. Johnson,* 8th Dist. Cuyahoga No. 91884, 2009-Ohio-2268, in arguing the failure to notify the defendant of a fine results in a plea that was entered unknowingly. However, this court in *State v. Flagg*, 8th Dist. Cuyahoga Nos. 93248 and 93249, 2010-Ohio-4247, distinguished *Johnson* by stating that in *Johnson*, the defendant pled to a single count, therefore, the possibility the fine would have impacted his decision was possible. However, in *Flagg*, the court decided the failure to so advise the defendant did not result in prejudice because the court did not impose a fine, and the defendant pleaded guilty to multiple violent counts with a potential for life in prison without parole. Thus, no prejudice occurred.

{¶21} Likewise, we have the same situation as in *Flagg*. Combs pled to multiple counts with the potential of death or life in prison. Thus, the court's failure to advise him of the fine could not have impacted his decision. Accordingly, Combs's first assigned error is overruled.

### Guilty Plea

{¶22} In his second assigned error, Combs argues that his plea was not knowingly, intelligently, and voluntarily entered because he did not understand the consequences of his plea, the rights he was forfeiting, the potential maximum penalties he faced, and did not realize that he could not receive community control sanction.

{¶23} We have already addressed Combs's contention that the trial court failed to advise him of the maximum sentence by failing to advise him of the fine on the second count.

{¶24} We also find no merit to Combs's contention that the court failed to explain his rights. He admits that the court advised him of his constitutional rights, but failed to have a dialogue with him to explain the rights. Specifically, the fact that his guilty plea did not mean he would automatically get the death penalty. Our review of the transcript shows that the trial court engaged Combs in a dialogue several times regarding the possible sentence he could receive, including life in prison. In fact, Combs acknowledged that based on his plea to the entire indictment, he could be sentenced to over 100 years in prison.

{¶25} Combs argues the trial court also failed to inform him that he was not eligible for community control sanctions. As the court explained the possible sentence on each count, it repeatedly advised Combs that the counts were nonprobationable.

{¶26} Based on our review of the record, the trial court adequately engaged in dialogue with Combs to ascertain that his plea was knowingly, voluntarily, and intelligently entered. Combs's second assigned error is overruled.

### Insufficiency and Manifest Weight of the Evidence

{¶27} In his third assigned error, Combs argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶28} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution"

and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

{¶29} Combs contends that his convictions were not supported by sufficient evidence because there was no evidence that he committed the crimes. Although the only eyewitness to the crime, Kalal, could not identify the murderer because he was wearing a mask, several witnesses testified to the fact that Combs owned a "scream mask" as described by Kalal. Combs's DNA also could not be excluded from DNA found on the victim's wallet, from which Kalal had stated the assailant had removed money.

{¶30} Several of the witnesses also testified that Combs had told them about killing Mechling, including his neighbor Joshua Nally, Combs's girlfriend Karen Fleming, and his friend Ray Labriola. Each of these witnesses corroborated each other's testimony. Nally's testimony as to Combs's description of the killing was identical to Kalal's testimony. Nally and Kalal do not know each other. Nally also stated that Combs told him that he gained access to the victim's apartment by cutting a hole in the screen. As he told Nally this, he made a U-shaped motion. One of the members of the forensics team testified that the screen at the scene was cut in a U-shape.

{¶31} Fleming, Labriola, and Shue all testified to the items that Combs placed in the bag. Labriola, Fleming, and Nally, all testified that Combs referred to the sword as a

"pig sticker" and told them that he used it to kill Mechling. Labriola turned in the sword that Combs had given to him to the police. Kalal testified that the sword looked similar to the one used to murder the victim; and Dr. Gilson testified that the sword could have caused some of the wounds on the body. This evidence, considered together, provided sufficient evidence that Combs was indeed the killer.

{¶32} Combs also contends the evidence was against the manifest weight of the evidence. In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id.* at ¶ 25.

{¶33} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a

new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id*.

{¶34} Combs contends that Fleming's testimony was "nothing short of bizarre" and that she was not credible because she was a heroin addict. The court was well aware of Fleming's prior addiction. Further, although Fleming's testimony was at times hard to follow, certain crucial details she provided were corroborated by other witnesses.

{¶35} Although the police received information that the killing was the result of a drug deal gone bad, the detective's investigation of the leads did not lead to any evidence to support the allegation. Accordingly, Combs's third assigned error is overruled.

### Jury Waiver

{¶36} In his fourth assigned error, Combs argues that he did not knowingly, intelligently, or voluntarily waive his right to a jury trial because he was not told that a jury would only make a recommendation of death, and the court would ultimately decide whether he would receive the death penalty. He also contends that he was also not told that a three-judge panel could block his wish to receive the death penalty.

{¶37} Our review of the record reveals that the trial court had extensive conversations with Combs regarding how the death penalty would be determined, both if he had a jury trial or pled before a three-judge panel. The court explained that under either scenario, he was not guaranteed to get the death penalty, but could instead receive life in prison.

**{¶38}** Although the court admittedly failed to tell Combs that the jury could only recommend the death penalty, we do not see how this affected the validity of his jury waiver. The Ohio Supreme Court in *State v. Jells*, 53 Ohio St.3d 22, 559 N.E.2d 464 (1990), explained as follow:

> There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel. *See State v. Morris* (1982), 8 Ohio App.3d 12, 14, 8 OBR 13, 15-16, 455 N.E.2d 1352, 1355. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so. Since the executed waiver in this case complied with all of the requirements of R.C. 2945.05, and counsel was present at the signing of the waiver, we find no error.

**{¶39}** In the instant case, the jury waiver form also complied with the requirements under R.C. 2945.05 and counsel was present at the time Combs signed the waiver. Not only did the trial court fully comply with R.C. 2945.05 in accepting the jury waiver, but the court also questioned Combs concerning the written waiver even though no such questioning was required. *Id.* at 25-26. 25 pages of the transcript contain the court's dialogue with Combs regarding the jury. Accordingly, Combs's fourth assigned error is overruled.

## Competency to Enter a Plea

**{¶40}**   In his fifth assigned error, Combs argues that he was not competent to enter a guilty plea because of his desire to commit suicide.

**{¶41}** The competency standard for standing trial is the same as the standard for pleading guilty or waiving the right to counsel.  In *State v. Mink,* 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, the appellant argued "that greater scrutiny was required in determining his competency because he waived counsel and actively sought the death penalty." *Id.* at ¶ 56.   In *Mink*, the court held as follows regarding the determining of competency:

> In *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L. Ed.2d 824, the Supreme Court explained the test for competency: a trial court must determine whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." (Internal quotations omitted.) * * *.

> R.C. 2945.37 and R.C. 2945.371 provide procedures for a trial court to follow in conducting competency evaluations and determinations. We set forth the test to determine whether a defendant is mentally competent to forgo the presentation of mitigating evidence in a capital case in *State v. Ashworth* (1999), 85 Ohio St.3d 56, 1999-Ohio-204,706 N.E.2d 1231. *Ashworth* provides that a "defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence." *Id*., paragraph two of the syllabus.

**{¶42}** In the instant case, the trial court went to great lengths before finding Combs to be competent to enter his plea.  Combs underwent several competency evaluations.  Defense counsel had Dr. Karpawich evaluate Combs.  Dr. Karpawich suggested that

Combs be sent to Twin Valley Behavioral Health Care for a 20-day competency evaluation. The psychologist at Twin Valley concluded that Combs was capable of understanding the nature and objection of the proceedings against him and was able to assist his attorney with his defense. Combs was also evaluated by the court psychologist who also concluded Combs was competent.

{¶43} Further, the record shows that Combs acted sensibly throughout the hearing, answered the trial court's questions in a straightforward fashion, and exhibited no irrational behavior. Under these circumstances, the trial court did not abuse its discretion in finding Combs to be competent since "reliable, credible evidence" supported such findings. *See State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33.

{¶44} Regarding his competency to waive the presentation of mitigation evidence, the Ohio Supreme Court in *State v. Ashworth* held:

> [A] defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence.

*Id*. at paragraph two of the syllabus. In the instant case, prior to mitigation, the court referred Combs for a competency determination as to whether he was competent to waive mitigation evidence. Both Dr. Resnick and Dr. Seawell concluded he was competent to waive the presentation of mitigation evidence.

In addition, the trial court had a dialogue with Combs to ascertain that he understood the proceedings and the waiver of mitigation evidence and inquired why Combs was waiving the presentation of mitigation evidence. Accordingly, whether Combs was competent to

waive mitigation evidence was thoroughly investigated. Combs's fifth assigned error is overruled.

## Protocol in Determining Competency not Followed

**{¶45}** In his sixth assigned error, Combs argues that the three-judge panel failed to find that he was competent to enter the plea. He specifically argues that the competency hearing was conducted before the presiding judge who determined Combs was competent and that the other judges did not discuss his competency until after he entered his plea.

**{¶46}** The presiding judge discussed Combs's competency prior to the three-judge panel being assembled. After the court explained Combs's rights and penalties, but prior to Combs entering his plea to each count, each of the judges on the panel were given the psychiatric reports performed on Combs and each judge found him to be competent. The evidence considered by the two judges was the same evidence considered by the presiding judge as Combs chose not to present any evidence to rebut the expert reports. Additionally, all of the judges were presented with the opportunity to question Combs to determine his competency, and, in fact did so. The two judges did not rely solely on the presiding judge's finding of competency. Therefore, based on the evidence before us, we conclude the protocol for determining Combs's competency was followed. Accordingly, Combs's sixth assigned error is overruled.

## Ineffective Assistance of Counsel

**{¶47}** In his seventh assigned error, Combs argues that his counsel was ineffective. To succeed on a claim of ineffective assistance, a defendant must establish that counsel's

performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶48} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694.

{¶49} Combs argues that counsel was ineffective for failing to cross-examine witnesses based on Combs's directive because Combs was clearly mentally ill. He also contends counsel was ineffective for failing to negotiate a better plea instead of allowing Combs to plead to the entire indictment and failed to object to other acts evidence testified to by Karen Fleming.

{¶50} As we stated above, the trial court did not err by finding that Combs was competent. Included in that finding is that Combs understood the proceedings and was able to assist his counsel. Therefore, based on the trial court's finding Combs to be competent, his counsel was not ineffective for following Combs's directive regarding his plea and defense. A defendant's "established recalcitrance" and persistent "undermining" of counsel's efforts defeats his ineffective assistance of counsel claim.

*Schriro v. Landrigan*, 550 U.S. 465, 127 S.Ct. 1939, 167 L.Ed.2d 836 (2007). Accordingly, Combs's seventh assigned error is overruled.

**Maximum and Consecutive Sentence**

**{¶51}** In his eighth assigned error, Combs argues the record did not support the trial court's imposition of a maximum, consecutive sentences. He specifically argues that the following considerations weighed against imposing maximum, consecutive sentences: 1) he suffers from post-traumatic stress disorder, 2) was a victim of arson causing severe burns over most of his body, 3) he experienced several physical attacks in prison causing serious psychological and physical injuries, 4) had mental health issues, 5) was remorseful to the victim's family, and 6) spared the victim's girlfriend from harm.

**{¶52}** In arguing this assigned error, Combs is not arguing that the court failed to comply with the statutory requirements in imposing maximum, consecutive sentences. Indeed, a review of the record shows the court assiduously recited the findings required by R.C. 2929.14 necessary to impose a consecutive sentence. Instead, Combs argues the trial court failed to consider the above facts in making its decision to impose the sentence. Thus, he is essentially arguing the trial court failed to consider mitigating factors pursuant to R.C. 2929.12. This court in *State v. Bement*, 8th Dist. Cuyahoga No. 99914, 2013-Ohio-5437, recently held:

> There is still no "mandate," however, for the sentencing court to engage in
>
> any factual findings under R.C. 2929.11 or 2929.12. *State v. Jones*, 12th
>
> Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 49, citing *Rose*, 12th
>
> Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 78; *State v. Putnam*,

11th Dist. Lake No. 2012-L-026, 2012-Ohio-4891, ¶ 9. Instead, the "trial court still has the discretion to determine whether the sentence satisfies the overriding purpose of Ohio's sentencing structure." *Jones* at ¶ 49. Furthermore, "[w]e can presume from a silent record that the trial court considered the appropriate factors unless the defendant affirmatively shows that the court has failed to do so." *State v. Bohannon*, 1st Dist. Hamilton No. C-130014, 2013-Ohio-5101, ¶ 7; *State v. Parsons*, 3d Dist. Auglaize No. 2-10-27, 2011-Ohio-168, ¶ 15.

**{¶53}** Our review of the record shows the court was aware of these facts when sentencing Combs, because it referred to them at the hearing when it decided to not impose a sentence of death. There is no reason to believe the court did not consider these factors moments later when it also sentenced Combs to life in prison. Accordingly, Combs's eighth assigned error is overruled.

## Other Acts Evidence

**{¶54}** In his ninth assigned error, Combs argues the trial court erred by allowing Karen Fleming to testify to other acts evidence.

**{¶55}** As we stated above, Combs did not permit counsel to object to any of the evidence, therefore, because there was no objection we can only review the matter for plain error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph one of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined that, but for the error, the outcome of the proceedings clearly would have been otherwise. *Id.* at paragraph two of the syllabus.

**{¶56}** We conclude there is no plain error.   Even if Fleming's testimony regarding the abusive relationship she had with Combs should have been excluded, given the other evidence provided by the other witnesses, the exclusion of this testimony would not have changed the outcome of the trial.   Accordingly, Combs's ninth assigned error is overruled.

**{¶57}**   Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON,   JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR

## APPENDIX

### Assignments of Error

I.   The trial court erred and violated Criminal Rule 11 during the plea hearing when it did not inform Combs of the maximum possible fine on Count Two.

II.   The trial court did not comply with Criminal Rule 11 during the plea hearing and Combs's plea of guilty was not knowingly, intelligently, and voluntarily made.

III.   The trial court erred when it found that the state had presented evidence in support of the guilty pleas that Combs was actually guilty beyond a reasonable doubt.   The finding was not supported by sufficient evidence and was against the manifest weight of the evidence.

IV.   The trial court erred when it accepted Combs's jury waiver without it being  made in a knowing, intelligent, and voluntary manner.

V.   The trial court erred when it found Combs competent to stand trial, enter a guilty plea, and to waive presentation of mitigating factors.

VI.   The trial court erred when the three-judge panel accepted Combs's guilty plea without all the members of the panel first finding him competent to stand trial and to enter a guilty plea.

VII.   Combs was denied his right to effective assistance of counsel guaranteed to him by Art. I, Sec. 10, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

VIII.   The trial court erred when it imposed maximum and consecutive sentences.

IX.   The trial court erred when it admitted other acts evidence regarding Karen Fleming.
KEY WORDS:
Case No.   99852