[Cite as *State v. McIntosh*, 2023-Ohio-4022.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-04-040 |
| | : | O P I N I O N |
| - vs - | | 11/6/2023 |
| | : | |
| JAMES E. McINTOSH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-09-1281

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**BYRNE, J.**

{¶ 1}  James McIntosh admitted to two violations of community control. As a result, the Butler County Court of Common Pleas revoked community control and sentenced McIntosh to an indefinite prison term. McIntosh appeals that decision. We affirm the trial court's decision.

## I. Factual and Procedural Background

{¶ 2} In October 2020, a Butler County grand jury indicted McIntosh on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. The indictment stemmed from allegations that McIntosh approached the victim in the victim's driveway, struck the victim in the head, and knocked him to the ground, causing the victim to lose consciousness. McIntosh then continued to assault the victim. The victim suffered serious injuries.

{¶ 3} In November 2020, McIntosh entered a plea of not guilty by reason of insanity ("NGRI"). McIntosh simultaneously moved for an evaluation to determine his mental status at the time of the alleged offense. The court ordered that McIntosh be evaluated for competency to stand trial and evaluated with respect to his plea of NGRI.

{¶ 4} Following an evaluation by a psychologist, the court found McIntosh competent to stand trial. Subsequently, three separate mental health evaluators issued reports opining on whether McIntosh met the qualifications for a plea of NGRI. The first opined that McIntosh *did* meet the criteria for a plea of NGRI. The second opined that McIntosh *did not* meet the criteria. The third, privately retained by McIntosh, opined that McIntosh *did* meet the criteria.

{¶ 5} In October 2021, the matter proceeded to a bench trial on the NGRI issue and on the felonious assault charge. The victim testified, as did the three mental health evaluators. The court subsequently issued a written decision finding that McIntosh had not met his burden of proof by a preponderance of the evidence to demonstrate that he was insane at the time of the offense. The court then found McIntosh guilty of felonious assault as charged.

{¶ 6} In November 2021, the court sentenced McIntosh to community control, consisting of one year of the SAMI (Substance Abuse Mental Illness) Court Program and

four additional years of basic supervision. The court advised McIntosh that a violation of community control could lead to a prison term consisting of an indefinite prison sentence of two to eight years, plus one half of the minimum prison sentence.

{¶ 7} As part of his sentencing, McIntosh signed a document titled "General Conditions of Supervision," which set forth the conditions, or rules, of his community control. McIntosh also signed a document that contained the conditions of his participation in the SAMI Court Program. One of the conditions in the SAMI Court Program document noted that McIntosh could be recommended for residential treatment at Sojourner.

{¶ 8} A few months later, in March 2022, the Butler County Adult Probation Department filed a Report and Notice of Violation, which alleged that McIntosh had violated two rules of the General Conditions of Supervision. The report contained the following allegations:

> Rule 7: On 03/08/2022 the offender admitted to getting prescriptions for Lyrica and Ambien and then misusing those prescriptions. An admission form was signed.
>
> Rule 14: The offender was unsuccessfully discharged from Sojourner programming on 03/08/2022.

The court, through its magistrate, held a probable cause hearing at which McIntosh was present. A probation officer repeated the allegations. Based on the testimony, the court found probable cause that McIntosh had violated the conditions of his supervision. Accordingly, the court scheduled McIntosh for a revocation hearing.

{¶ 9} At the revocation hearing, the court recited the alleged rule violations and asked how McIntosh wished to proceed. McIntosh's counsel indicated that McIntosh would admit to both rule violations. The court then asked McIntosh if that was what he wanted to do. McIntosh replied, "Yes, sir" and confirmed that he had talked to his attorney about his decision to admit to the community control rule violations.

{¶ 10} The court accepted McIntosh's admissions and heard arguments for leniency in sentencing from McIntosh's counsel, as well as a statement in mitigation from McIntosh. Afterwards, the court revoked community control and imposed an indefinite prison term consisting of a minimum stated prison term of six years and a maximum term of nine years.

{¶ 11} McIntosh raises three assignments of error in this appeal. We will address these assignments of error out of the order in which they were presented by McIntosh.

## II. Law and Analysis

### A. *State v. Qualls* and Plain Error

{¶ 12} McIntosh's second assignment of error states:

{¶ 13} THE TRIAL COURT COMMITTED PLAIN ERROR AT THE REVOCATION HEARING.

{¶ 14} McIntosh argues that the trial court in the case before us committed plain error by "failing to apply the mandated 1988 *Qualls* rule to decide the revocation and sentence." McIntosh's reference is to *State v. Qualls*, 50 Ohio App.3d (10th Dist.1988). McIntosh contends that the court erred by failing to consider whether insanity was a mitigating factor before revoking his community control and sentencing him. McIntosh concedes that a plain error standard of review is to be applied to this argument because his trial counsel failed to raise *Qualls* or a *Qualls*-type argument before the trial court.

{¶ 15} Crim.R. 52(B) provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." That rule "places three limitations on a reviewing court's decision to correct an error not raised before the trial court." *State v. Fuell*, 12th Dist. Clermont No. CA2020-02-008, 2021-Ohio-1627, ¶ 70, citing *State v.* Barnes, 94 Ohio St. 3d 21, 27 (2002). "First, an error, 'i.e., a deviation from a legal rule,' must have occurred." *Fuell* at *id.*, quoting *Barnes* at 27. "Second, the error complained of must be plain, i.e., it must be 'an "obvious" defect in the *

- 4 -

* * proceedings.'" *Id.* Stated otherwise, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 30. "Third, the error must have affected 'substantial rights.'" *Fuell* at ¶ 70, quoting *State v. Martin*, 154 Ohio St.3d 513, 2018-Ohio-3226, ¶ 28. This means the error must have affected the outcome of the proceedings. *Barnes* at 27. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v.* Baldev, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

{¶ 16} In *Qualls*, the Tenth District Court of Appeals rejected the argument that insanity at the time of an act that results in the revocation of parole is a complete defense to parole revocation. *Id.* at 59-60. But the Tenth District stated that while "insanity is not a complete defense in a probation revocation hearing[,]" insanity was instead "a mitigating factor which a court should consider when the issue is timely raised." *Id.* at 60. The trial court in our case did not refer to *Qualls* in its analysis and did not refer to insanity as a mitigating factor.

{¶ 17} We find no error here, much less, plain error. First, *Qualls* was decided by the Tenth District Court of Appeals, so it is not controlling precedent in this district. Second, McIntosh cites no case from our court where we adopted *Qualls'* rule that insanity is "a mitigating factor which a court should consider when the issue is timely raised" in the context of a revocation hearing. *Qualls* at 60. Third, even if the *Qualls* rule had been adopted by this court, it would not apply in this case because McIntosh did not claim or even suggest at the revocation hearing that he was insane when he committed his community control rule violations. Nor is there any evidence in the record suggesting that McIntosh was insane at the time of those rule violations. McIntosh's appellate counsel merely speculates that

- 5 -

McIntosh may have been able to argue for insanity in mitigation based on earlier mental health issues.

{¶ 18} *Qualls* stated that a trial court "should consider" insanity "when the issue is timely raised" at a revocation hearing, but McIntosh never raised the possibility that he was insane at the time of his community control violations, either at the hearing or at any other time. *Qualls* is therefore irrelevant in this case.

{¶ 19} For these reasons, the court did not commit plain error by failing to follow the "*Qualls* rule" prior to revoking community control and proceeding to impose sentence. We overrule McIntosh's second assignment of error.

### B. Ineffective Assistance of Counsel

{¶ 20} McIntosh's first assignment of error states:

{¶ 21} TRIAL COUNSEL WAS INEFFECTIVE AT THE REVOCATION HEARING.

{¶ 22} McIntosh argues that his counsel provided ineffective assistance at the revocation hearing in three ways, which we will address in turn.

{¶ 23} The test for ineffective assistance of counsel requires a defendant to prove (1) "that counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In reviewing a claim of ineffective assistance of counsel, we examine whether counsel's acts or omissions "were outside the wide range of professionally competent assistance" while "recogniz[ing] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To establish the second element of prejudice, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 24} Regarding the prejudice element, we have stated that "[i]n cases in which an appellant alleges ineffective assistance with regard to a guilty plea, 'to show prejudice, the defendant must demonstrate there is a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *State v. Hawks*, 12th Dist. Warren Nos. CA2021-11-103 and CA2021-11-104, 2022-Ohio-4137, ¶ 21, quoting *State v. Byrd*, 12th Dist. Madison No. CA2021-07-011, 2022-Ohio-1364, ¶ 11. Accord *State v. Longworth*, 12th Dist. Butler No. CA2021-02-015, 2021-Ohio-4538, ¶ 35.

**1. Rule 7 Violation**

{¶ 25} Rule 7 of the General Conditions of Supervision applicable to McIntosh's community control, which McIntosh agreed to follow, provided that,

> I will not possess, **use**, purchase, or have under my control any narcotic drug or other controlled substance or illegal drugs, including any instrument, device or other object used to administer drugs or to prepare them for administration, **unless it is lawfully prescribed for me by a licensed physician**. I agree to inform my supervising officer promptly of any such prescription and I agree to submit to drug testing if required by the Butler County Court of Common Pleas. I will also be subjected to mandatory DNA testing which will be conducted at the departments [sic] order.

(Bold emphasis added.) The Butler County probation department asserted that McIntosh violated Rule 7 by "misusing" his prescriptions for Lyrica and Ambien.

{¶ 26} McIntosh argues that his trial counsel provided deficient attorney performance by permitting him to admit to a Rule 7 violation when, in fact, he did not violate Rule 7. Specifically, McIntosh argues that he did not violate Rule 7 because he "possessed valid prescriptions" for both Lyrica and Ambien. McIntosh concedes that the probation department alleged that he was misusing those prescriptions, but argues that the Report and Notice contained no detail as to *how* he was misusing his prescriptions. McIntosh contends that these prescriptions could have been used for treatment of his mental health

issues, which would make their use permissible under Rule 7. He also contends that even if he abused his prescriptions, such abuse was not a violation of Rule 7 because the rule did not specifically forbid "abuse" of prescribed medication.

{¶ 27} We first note that while McIntosh now contends that he did not violate Rule 7, it remains the case that both McIntosh's counsel and McIntosh himself *admitted* to the Rule 7 violation at the April 14, 2022, hearing. McIntosh and his counsel did so after they had heard a probation officer generally describe the alleged violations at an earlier probable cause hearing. As a result, there was no need for the state to provide further evidence regarding the details of the Rule 7 violation, and no details other than what was alleged in the probation department's "Report and Notice of Violation" are in the record on appeal.

{¶ 28} Upon review, we find that McIntosh has cited nothing in the record that would support the contention that his trial counsel's representation was "outside the wide range of professionally competent assistance." *Strickland* 466 U.S. at 690. Even if we assume that McIntosh is correct in asserting that his Lyrica and Ambien prescriptions were meant to treat his mental health issues, this does not change the fact that by admitting to "misusing" his prescriptions as stated in the probation department's "Report and Notice of Violation," McIntosh admitted to violating Rule 7.[1] While Rule 7 did not prohibit McIntosh from using controlled substances that were lawfully prescribed by a physician, the rule stated that McIntosh was not permitted to "use * * * [a] controlled substance * * * unless it is lawfully prescribed for me by a licensed physician." Using a prescribed controlled substance in a manner other than that "lawfully prescribed" is necessarily not "use" of that drug as "lawfully

---

1. In support of his contention that his Lyrica and Ambien prescriptions were meant to address his mental health issues, McIntosh cites an exchange that occurred at trial between the prosecutor and one of the doctors who evaluated McIntosh. Our review of this testimony does not clearly indicate to us that the doctor testified that these medications were for mental health treatment. That is, there is some ambiguity in the testimony. Regardless, for purposes of our analysis we assume that the Lyrica and Ambien prescriptions were prescribed to address McIntosh's mental health issues.

prescribed," and in fact is abuse of that prescription. While Rule 7 may have been clearer if it had explicitly listed "abuse" of a prescribed controlled substance as prohibited under the terms of community control, the rule's text *did* in effect prohibit abuse of a prescribed controlled substance. Accordingly, there is a basis in the record for McIntosh's counsel's decision to not contest the violation of Rule 7 and instead rely on arguments in favor of leniency at sentencing.

{¶ 29} Moreover, McIntosh confirmed on the record that *he* wanted to admit to the violation and that he had the opportunity to speak with his attorney about admitting. We do not know the content of that attorney-client conversation, but the law does not require us to *presume* that counsel provided constitutionally deficient advice to his client. To the contrary, we presume that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690. Given that there was a basis for the Rule 7 violation, we find no evidence that would challenge that presumption.

{¶ 30} Finally, as other courts have held, oral notice coupled with a defendant's complete admission to a community control violation at a preliminary hearing typically satisfies any due process or effective assistance of counsel concerns. *State v. Jimenez*, 8th Dist. Cuyahoga No. 104735, 2017-Ohio-1553, ¶ 6, citing *State v. Frazier*, 8th Dist. Cuyahoga No. 104596, 2017-Ohio-470, ¶ 10-11 and other cases. *Accord State v.* Clark, 3d Dist. Union No. 14-22-01, 2022-Ohio-2539, ¶ 15-16; *State v. Dye*, 4th Dist. Athens No. 16CA17, 2017-Ohio-9389, ¶ 18. As in *Jimenez*, McIntosh had a preliminary hearing at which he received oral notice of the alleged community control violations. He subsequently made a complete admission to the violations at the revocation hearing. McIntosh's complete admission satisfied any concerns of effective assistance of counsel. *Jimenez* at ¶ 6.

{¶ 31} Accordingly, we find no merit to McIntosh's ineffective assistance argument regarding his admission to a Rule 7 violation.

## 2. Rule 14 Violation

{¶ 32} Rule 14 of the General Conditions of Supervision, which McIntosh agreed to follow, provided that he would,

> [F]ollow all rules and regulations regarding of [sic] treatment facilities or programs of any type in which I am placed or ordered to attend while under the jurisdiction of the Butler County Court of Common Pleas.

The probation department asserted that McIntosh violated Rule 14 by being "unsuccessfully discharged from Sojourner programming * * *."

{¶ 33} McIntosh argues that his trial counsel provided deficient attorney performance by permitting him to admit to the Rule 14 violation when, he says, he did not violate Rule 14. He argues that the putative violation "deviated" from the court's sentence, which he argues was to "complete the Community Correction Center program–not Sojourner * * *."

{¶ 34} In support of this argument, McIntosh cites a transcript from a hearing held November 18, 2021, at which McIntosh admitted to a community control violation and the court ordered McIntosh to enter "CCC" (presumably the Community Correction Center program) and said nothing about ordering him to Sojourner. But this November 18, 2021, transcript concerned a hearing held *not* in the case before us (Butler County Case No. CR2020-09-1281), but instead in an *entirely different case* (Butler County Case No. CR2018-12-2243). Specifically, McIntosh admitted at the November 18, 2021, hearing that his felonious assault conviction in this case (Butler County Case No. CR2020-09-1281) violated the terms of the community control that had previously been imposed on him for his offense in that second case (Butler County Case No. CR2018-12-2243). Given that the transcript cited involves an entirely separate criminal case that is not before us on appeal,

it is not certain how this transcript became part of our appellate record or whether we could properly consider it.

{¶ 35} Regardless, assuming the transcript is properly part of the appellate record, it does not support McIntosh's argument that he was not ordered to complete the Sojourner program while under the jurisdiction of the Butler County Court of Common Pleas in the case before us on appeal. The transcript merely establishes that, in an entirely different case, McIntosh was ordered to participate in "CCC."

{¶ 36} Moreover, there is evidence in the appellate record to support the argument that McIntosh could have been ordered to complete the Sojourner program as part of his community control in the case before us. As discussed above, the court placed McIntosh into the SAMI Court Program for one year. At sentencing, McIntosh signed an agreement containing the conditions of his participation in the SAMI Court Program. That agreement— titled "SAMI (Substance Abuse Mental Illness) COURT PROGRAM PARTICIPATION AGREEMENT AND WAIVER OF RIGHTS"—states that McIntosh could be recommended for "residential treatment" at any time during his participation in the SAMI Program. It also states that "Sojourner Recovery Services for Men" was one of the residential treatment programs used by SAMI to which McIntosh could be referred.

{¶ 37} We do not know the precise basis for why McIntosh was "unsuccessfully discharged" from Sojourner. This is because McIntosh did not contest the violation and thus no record was developed on this subject. However, there is nothing in the record cited by McIntosh that supports the conclusory statement in his appellate brief that he did not violate Rule 14. To the contrary, the evidence in the record suggests that McIntosh agreed to follow the rules of treatment facilities or programs in which he was placed and that he was subject to being placed in Sojourner as part of the SAMI Court Program. Because there is nothing in the record to support the argument that McIntosh had a reason to contest

the Rule 14 violation, there is no support for the argument that his trial counsel was deficient for not contesting the violation.

{¶ 38} Moreover, as with the Rule 7 violation, McIntosh received oral notice of the Rule 14 violation and completely admitted to the violation. His actions waived any effective assistance of counsel concerns. *Jimenez*, 2017-Ohio-1553 at ¶ 6.

### 3. Failure to Cite *Qualls* or Investigate a Mental Illness Defense

{¶ 39} Next, McIntosh argues his counsel was ineffective because he failed to cite or direct the court's attention to the Tenth District Court of Appeals' opinion in *Qualls*, and its language directing trial courts to consider an offender's insanity at the time of a community control rule violation, which we discussed above. Building on this argument, McIntosh argues that trial counsel was ineffective for failing to investigate potential defenses to the Rules 7 and 14 infractions based on a mental illness defense.

{¶ 40} McIntosh's argument fails for two reasons. First, as we stated in our discussion of McIntosh's first assignment of error, *Qualls* is not controlling precedent in the Twelfth District and its reasoning has not been adopted by this court. As such we cannot see any basis for concluding that trial counsel's performance in not citing or directing the trial court's attention to *Qualls* was deficient.

{¶ 41} Second, there is nothing in the record, other than appellate counsel's suggestion, that McIntosh's community control violations were committed at a time when he was legally insane. Thus, to hold that trial counsel was deficient for not investigating potential defenses based on mental illness would require us to speculate and assume facts not in the record. *State v. Miller*, 12th Dist. Brown No. CA2022-09-008, 2023-Ohio-1600, ¶ 26 ("Speculation is not sufficient to establish ineffective assistance of counsel").

{¶ 42} Because we do not find that McIntosh has established any instances of deficient performance regarding his trial counsel's actions at the revocation hearing, we

need not consider the issue of prejudice. *See State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54.

{¶ 43} We overrule McIntosh's first assignment of error.

## C. Sentencing Issues

{¶ 44} McIntosh's third assignment of error states:

{¶ 45} MCINTOSH'S SENTENCE WAS CONTRARY TO LAW.

{¶ 46} McIntosh makes three arguments regarding his sentence. We will examine these arguments in turn.

### 1. Consideration of R.C. 2929.13(B) Factors

{¶ 47} McIntosh first argues that the trial court erred by considering the R.C. 2929.13(B) factors in revoking community control and imposing sentence.

### a. Applicable Law and Standard of Review

{¶ 48} There are a number of statutes which discuss factors for trial courts to consider when sentencing an offender. Three such statutes are relevant to our analysis in this case. First, R.C. 2929.11 states that a sentencing court "that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing * * *" and lists those purposes and factors to be considered. R.C. 2929.11(A), (B). Second, R.C. 2929.12 lists factors that a sentencing court "shall" consider in assessing the seriousness of the offender's conduct and the offender's potential for recidivism. R.C. 2929.12(A), (B), (C), (D), and (E). Third, R.C. 2929.13(B) provides that a sentencing court "shall" sentence an offender to community control when the offender has been convicted of or pleads guilty to a "felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense * * *[,]" provided that three conditions listed in the statute are satisfied. R.C. 2929.13(B)(1)(a)(i), (ii), and (iii). But R.C. 2929.13(B) also provides that a sentencing court "has discretion to impose a prison term upon an offender who is convicted of or pleads guilty

to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply * * *[,]" and then lists ten scenarios. R.C. 2929.13(B)(1)(b)(i) thru (x).

{¶ 49} R.C. 2953.08(G)(2) defines the standard of review for felony sentencing appeals. *State v. Day*, 12th Dist. Warren No. CA2020-07-042 and CA2020-07-043, 2021-Ohio-164, ¶ 6. This remains true when the trial court does not impose the felony sentence until a community control revocation hearing prompted by the offender's violation of the terms of community control. *See State v. Covington*, 12th Dist. Butler No. CA2020-10-103, 2021-Ohio-2983, ¶ 5, 11, 14. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 50} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, the Ohio Supreme Court clarified an appellate court's scope of review under R.C. 2953.08(G)(2)(a) and (b). First, the supreme court noted that R.C. 2953.08(G)(2)**(a)** permits an appellate court to modify or vacate a sentence if the appellate court clearly and convincingly finds that the record does not support the sentencing court's finding under certain specified statutory provisions listed in the statute (that is, R.C. 2929.13[B] or [D], R.C. 2929.14[B][2][e] or [C][4], or R.C. 2929.20[I]). *Id.* at ¶ 28. However, the supreme court noted that R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a), and therefore held that R.C. 2953.08(G)(2)(a) does not permit an appellate court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12 *Id.* at ¶ 28-29.

{¶ 51} Second, in *Jones*, the Ohio Supreme Court held that R.C. 2953.08(G)(2)**(b)** "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. The supreme court reasoned that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Instead, a sentence is not clearly and convincingly contrary to law where a trial court "'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Lopez-Cruz*, 12th Dist. Butler No. CA2022-07-068, 2023-Ohio-257, ¶ 8, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

### b. Analysis

{¶ 52} In its sentencing entry, the trial court stated that it considered "the principles and purposes of sentencing under [R.C] 2929.11, and has balanced the seriousness and recidivism factors [under R.C.] 2929.12." Based on its review of those factors, the trial court found "that the defendant is not amenable to an available community control sanction." (Emphasis omitted.)

{¶ 53} The record therefore reflects that the court considered the R.C. 2929.11 principles and purposes of sentencing, as well as the R.C. 2929.12 factors. The record also reflects that the court properly imposed postrelease control and properly sentenced McIntosh within the permissible statutory range for a second-degree felony offense. Accordingly, McIntosh's sentence is not contrary to law. *Lopez-Cruz* at ¶ 8.

{¶ 54} But the trial court also stated in the sentencing entry that "The Court has considered the factors under [R.C.] 2929.13(B) and finds the following defendant violated

prior community control." McIntosh is correct that the R.C. 2929.13(B) factors were not applicable in his case because he was convicted of a second-degree felony and the R.C. 2929.13(B) factors only apply to fourth- and fifth-degree felonies. There was therefore no need for the trial court to consider the R.C. 2929.13(B) factors.

{¶ 55} As stated above, R.C. 2953.08(G)(2)(a) authorizes us to take action with respect to the sentence if we determine that the record does not clearly and convincingly support the sentencing court's findings under R.C. 2929.13(B). But McIntosh did not argue that the record failed to support any of the court's findings under R.C. 2929.13(B). Nor does he argue that his sentence was clearly and convincingly contrary to law because the trial court reviewed the R.C. 2929.13(B) factors when it was unnecessary to do so. He simply argues that the trial court erred because it considered those factors when it was not required to do so.

{¶ 56} Pursuant to R.C. 2953.08(G)(2), we are unable to modify or vacate McIntosh's sentence based on any claimed error in the trial court's additional consideration of R.C. 2929.13(B) factors. But beyond our inability to modify or vacate the sentence, we note that McIntosh fails to offer any explanation for how the court's additional consideration of the R.C. 2929.13(B) factors prejudiced him. On this record, we can discern no prejudice. This argument is meritless.

### 2. Reagan Tokes Law Notifications

{¶ 57} McIntosh next argues that the trial court erred by failing to properly provide the mandatory Reagan Tokes Law notifications set forth in R.C. 2929.19(B)(2)(c). McIntosh concedes that the trial court properly advised him—orally—of the Reagan Tokes notifications during the sentencing hearing. But he argues that the court erred by not also including those notifications in its written sentencing entry. This court has not previously decided whether the mandatory Reagan Tokes notifications must be included in a written

sentencing entry.

{¶ 58} We first turn to the text of the statute. *See State v. Chappell,* 127 Ohio St.3d 376, 2010-Ohio-5991, ¶ 16. R.C. 2929.19(B)(2) states in relevant part that "if the sentencing court determines *at the sentencing hearing* that a prison term is necessary or required, the court shall do all of the following * * *." (Emphasis added.) The phrase "all of the following" refers to multiple provisions concerning sentencing notifications, including but not limited to R.C. 2929.19(B)(2)(c). That subsection states that the sentencing court must "notify" the offender of five advisements, set forth in R.C. 2929.19(B)(2)(c)(i)-(v), when imposing an indefinite prison term under the Reagan Tokes Law. The statute contains no language whatsoever referencing any obligation for the sentencing court to include the Reagan Tokes notifications in a written sentencing entry. On the contrary, the plain language of the statute indicates that the Reagan Tokes notifications are to be provided to the offender "at the sentencing hearing," meaning the notifications must be orally delivered at the hearing. Consistent with the statutory text, we conclude that R.C. 2929.19(B)(2)(c) *only* requires that a sentencing court "notify" the offender of the Reagan Tokes advisements *orally* "at the sentencing hearing," and does *not* require that the court repeat those advisements in the *written* sentencing entry.

{¶ 59} McIntosh offers no contrary textual analysis. Instead, he argues a corollary, i.e., that because mandatory *postrelease control* notifications must be orally given at the sentencing hearing and must also be included in the written sentencing entry, then mandatory Reagan Tokes notifications must be as well. In making this argument, McIntosh relies on the fact that the provisions regarding postrelease control notifications and Reagan Tokes notifications are set forth in the same statute, R.C. 2929.19(B)(2). Indeed, mandatory postrelease control notifications are described in R.C. 2929.19(B)(2)(d) and (e). The same "at the sentencing hearing" language in R.C. 2929.19(B)(2) that modifies the (c) subsection

concerning Reagan Tokes notifications also modifies the (d) and (e) subsections concerning postrelease control notifications. Likewise, the (d) and (e) postrelease control subsections state that the sentencing court shall "notify" the offender of certain information, as does the (c) subsection.

{¶ 60} McIntosh also relies on Ohio Supreme Court case law holding that the R.C. 2929.19(B)(2)(d) and (e) postrelease control notifications must be delivered orally by the court at a sentencing hearing *and* must also be stated, in writing, in the court's written sentencing entry.[2] *E.g.*, *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, ¶ 1, 8; *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, paragraph one of the syllabus, *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, syllabus.[3] McIntosh posits that "It would * * * be nonsensical and inconsistent to require [postrelease control] notifications in the entry but exempt the Reagan Tokes notifications from the entry."

{¶ 61} As an intermediate appellate court, we are bound to follow the Ohio Supreme Court's precedents on postrelease control notifications, and we have repeatedly done so. *See State v. Demangone*, 12th Dist. Clermont No. CA2022-11-081, 2023-Ohio-2522, ¶ 22; *State v. Williams*, 12th Dist. Butler No. CA2018-03-055, 2018-Ohio-3990, ¶ 17 ("A trial court must properly impose postrelease control at the sentencing hearing *and* in the sentencing entry"). (Emphasis added). But must we follow the Ohio Supreme Court's precedents regarding postrelease control notifications in the context of Reagan Tokes notifications? No, for the reasons we explain below.

---

2. Some of the Ohio Supreme Court cases discussing the R.C. 2929.19(B)(2)(d) and (e) postrelease control notifications refer to different subsection numbers. These provisions were moved within R.C. 2929.19 after the statute was amended to add the Reagan-Tokes notifications (now found at R.C. 2929.19[B][2][c]) to the statute).

3. This is a different *State v. Qualls*, with a different appellant, than the Tenth District *State v. Qualls* case discussed earlier in this opinion.

{¶ 62} In many cases, McIntosh's argument that our analysis of R.C. 2929.19(B)(2)(c) must be consistent with the Ohio Supreme Court's interpretation of R.C. 2929.19(B)(2)(d) and (e) would be correct. It is a well-known principle of statutory interpretation that "If a statute uses words or phrases that have already received authoritative construction by the jurisdiction's court of last resort * * * they are to be understood according to that construction." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 322 (2012). However, this canon of construction may be "overcome[]" by "other sound rules of interpretation." *Id.* at 324. Such is the case here, where the Ohio Supreme Court has not justified its requirement that postrelease control notifications be included in sentencing entries by providing any authoritative interpretation of any specific words in R.C. 2929.19. That is, the supreme court's reasoning in *Grimes*, *Jordan*, and similar cases does not rest on an interpretation of the phrase "at the sentencing hearing" in R.C. 2929.19(B)(2), on the word "[n]otify" as used in R.C. 2929.19(B)(2)(d) and (e), or on any other word or phrase in the statute.

{¶ 63} Instead, the Ohio Supreme Court's requirement that postrelease control notifications must be included in a sentencing entry is "completely judge-made law" divorced from the interpretation of any word or phrase in the statute. *State v. Bates*, 167 Ohio St.3d 197, 2022-Ohio-475, ¶ 56 (DeWine, J., dissenting). We agree with those justices who have pointed out that the Ohio Supreme Court's requirement that postrelease notifications be provided not only at the sentencing hearing but also in the sentencing entry is not supported by the text of the postrelease control notification statutes. *Bates* at ¶ 33 (Kennedy, J., dissenting) (R.C. 2929.19 "does not require courts to incorporate that [postrelease control] notice into the sentencing entry, but our caselaw does") and ¶ 45, 55-59 (DeWine, J., dissenting) ("The only notifications concerning postrelease control are to be provided 'at the sentencing hearing.' R.C. 2929.19[B][2]"); *Grimes*, 2017-Ohio-2927 at

¶ 42-45 (DeWine, J., concurring in judgment only) ("There is no statutory requirement that anything regarding postrelease control be stated in [an offender's] sentencing entry"), and ¶ 26 (Kennedy, J., concurring in judgment only) ("I agree with the portion of Justice DeWine's opinion concurring in judgment only that concludes that R.C. 2929.19[B[[2] requires only that the two specified [postrelease control] notifications be provided 'at the sentencing hearing'").

{¶ 64} Instead of basing its rule regarding postrelease control notifications on the statutory text, the Ohio Supreme Court has provided a non-textual justification for this judge-made law. First, the supreme court has explained that "because a court is generally said to speak only through its journal," the postrelease control notifications must be included in a sentencing entry. *Grimes* at ¶ 8 (O'Connor, C.J.), citing *Jordan*, 2004-Ohio-6085 at ¶ 6. We agree that a court generally speaks only through its journal. *State v. Myers*, 119 Ohio App.3d 642, 645 (12th Dist.1997). But this general principle does not mean that all of a trial court's oral decisions or statements must be recorded in a written entry. If that were the case, many decisions or statements made by judges at trial—such as oral decisions denying a Crim.R. 29 motion for acquittal, or overruling objections to testimony—would be legal nullities unless recorded in a written entry. We see no reason, then, why the general principle that a court speaks through its journal would necessarily require that Reagan Tokes notifications be included in a sentencing entry.

{¶ 65} The supreme court has also cited the constitutional principle of the separation of powers as a second basis for its holding that postrelease control notifications must be included in a sentencing entry. *Jordan* at ¶ 19-22, citing *Woods v. Telb*, 89 Ohio St.3d 504, 512-513 (2000). The supreme court reasoned that the Adult Parole Authority cannot itself impose postrelease control, and instead can only impose postrelease control when postrelease control is part of a judge's sentence. *Id.* at ¶ 19. We do not see how the

supreme court's separation of powers concerns in the postrelease control notification context would also apply with respect to Reagan Tokes notifications. In *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Ohio Supreme Court held that because a judge sets the minimum and maximum prison terms under Reagan Tokes, the Department of Rehabilitation and Correction does not exercise judicial power in violation of the separation of powers when it prolongs an offender's time in prison within that range. *Id*. at ¶ 13-25. Nothing about the supreme court's analysis in *Hacker* suggests that the separation of powers would be violated if the Reagan Tokes notifications were not included in a sentencing entry.

{¶ 66} Because the Ohio Supreme Court's reasoning in *Grimes*, *Jordan*, and *Qualls* does not apply in the Reagan Tokes notification context, and because those opinions do not apply to Reagan Tokes notifications under R.C. 2929.19(B)(2)(c), we are free to interpret that statute independently of *Grimes*, *Jordan*, and *Qualls*.

{¶ 67} Therefore, consistent with the text of the statute, we hold the Reagan Tokes notifications required by R.C. 2929.19(B)(2)(c) must be given at a sentencing hearing, but do not need to be restated in a sentencing entry. No statute requires that the notifications be restated in a sentencing entry, and it is not our role to create a new law where there is none.[4] The trial court did not err by not including the Reagan Tokes notifications in the sentencing entry.

### 3. Failure to Challenge Reagan Tokes Law

{¶ 68} Finally, McIntosh argues that his attorney was ineffective for failing to raise a

---

4. We further note that even if McIntosh were correct that Reagan Tokes notifications were required to be stated in a sentencing entry, as is the case with postrelease control notifications, then the trial court's failure to do so in this case would not constitute reversible error entitling McIntosh to a new sentencing hearing. Instead, such an error would be a clerical error that could be corrected with a nunc pro tunc entry. *See Qualls*, 2012-Ohio-1111 at the syllabus ("When a defendant is notified about postrelease control at the sentencing hearing, but notification is inadvertently omitted from the sentencing entry, the omission can be corrected with a nunc pro tunc entry and the defendant is not entitled to a new sentencing hearing").

constitutional challenge to the Reagan Tokes Law and that the trial court plainly erred by "failing to acknowledge" that the Ohio Supreme Court had accepted jurisdiction over the issue of the constitutionality of the Reagan Tokes Law. McIntosh does not specify what constitutional argument his attorney should have raised.

{¶ 69} We have repeatedly found that the failure to raise a challenge to the constitutionality of the Reagan Tokes Law does not constitute ineffective assistance of counsel. *State v. McClendon*, 12th Dist. Warren No. CA2021-08-075, 2022-Ohio-2830, ¶ 16; *State v. Abner*, 12th Dist. Warren No. CA2021-05-048, 2021-Ohio-4549, ¶ 25; *State v. Luttrell*, 12th Dist. Warren No. CA2021-07-062, 2022-Ohio-1148, ¶ 30; *State v. Roberson*, 12th Dist. Warren No. CA2021-01-003, 2021-Ohio-3705, ¶ 43; and *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 18. Moreover, the Ohio Supreme Court recently held that the Reagan Tokes Law is facially constitutional under the federal Due Process Clause and does not violate the right to a jury trial or the separation-of-powers doctrine. *Hacker*, Slip Opinion No. 2023-Ohio-2535 at ¶ 25, 28.

{¶ 70} Finally, McIntosh's argument that the trial court erred by "failing to acknowledge the pending Supreme Court cases" is inexplicable. McIntosh does not explain this argument in his appellate brief, nor can we discern any reason as to why it was error for the trial court not to have "acknowledged" pending Supreme Court cases. This argument is meritless.

{¶ 71} For the foregoing reasons, McIntosh's sentence is not contrary to law. We overrule McIntosh's third assignment of error.

### III. Conclusion

{¶ 72} The trial court did not plainly err at the revocation hearing by failing to consider insanity in mitigation. McIntosh has failed to establish that his attorney provided ineffective assistance at the revocation hearing. McIntosh failed to establish any error in his sentence.

We therefore overrule all of McIntosh's assignments of error.

{¶ 73} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.