[Cite as *State v. Murphy*, 2025-Ohio-63.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|                      |   |                          |
|----------------------|---|--------------------------|
| STATE OF OHIO,       | : |                          |
| Appellee,            | : | CASE NO. CA2024-04-049   |
|                      | : | O P I N I O N            |
| - vs -               |   | 1/13/2025                |
|                      | : |                          |
| RONDA L. MURPHY,     | : |                          |
| Appellant.           | : |                          |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-08-1167


Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.


**BYRNE, P.J.**

{¶ 1} Ronda L. Murphy appeals from her sentence for multiple counts of cruelty to companion animals in the Butler County Court of Common Pleas. For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2} In October 2023, a Butler County grand jury indicted Murphy on 23 counts. In Counts 1 to 16, the state charged Murphy with cruelty to a companion animal (causing serious physical harm), in violation of R.C. 959.131(C), all fifth-degree felonies. In Counts 17 to 23, the state charged Murphy with cruelty to a companion animal, in violation of R.C. 959.131(D)(2), all second-degree misdemeanors.

{¶ 3} The indictment stemmed from allegations that law enforcement officers located 90 adult dogs on Murphy's property that were starving, needing medical attention, living in deplorable conditions, and confined in small cages. In addition, officers found approximately 30 deceased dogs in various states of decay, hidden in refrigerators and freezers, some of which were non-working. The officers seized the living dogs and transferred them to an animal shelter.

{¶ 4} Murphy and the state subsequently negotiated a plea agreement. Murphy agreed to plead guilty to Counts 1 to 8 (fifth-degree felonies) and Counts 17 to 20 (second-degree misdemeanors). In return the state agreed to dismiss the remaining 11 counts of the indictment. There was no agreement as to sentencing.

{¶ 5} At a January 2024 plea hearing, the court engaged Murphy in a plea colloquy in which it advised her of the maximum penalties she faced by pleading guilty and the trial rights she was waiving. Murphy subsequently entered her plea and the court found her guilty.

{¶ 6} During the plea hearing, the prosecutor stated the following as to the offenses:

> This is a situation that on that day, they [referring to the deputy dog wardens who investigated the case] came to the properties of this Defendant. They found 90 living adults dogs, 114 if you include all of the puppies that were there. There were 18 dead dogs on the property and a handful of

dead but unrecoverable dogs because they were so liquified that no one could scoop them up.

The indictment represented each different dog that we could ascertain, and the difference between the felonies is that she knowingly caused serious physical harm to many of these dogs, eight of which she pled to. And for the misdemeanors, she knowingly had an environment for the dogs that, basically, nothing living, human or otherwise, should ever have to be – should ever have to be subjected to.

She had bags and bags of dog food, but she didn't put any dog food down for any of these dogs. She had water . . . on the properties and would never give these dogs water. They were crammed into tiny little spaces, multiple dogs in cages everywhere. The smell of feces and urine made very experienced dog wardens like vomit. They had to almost go – they had to go outside so they didn't vomit and keep going back in and – so I really hope that the waterworks that she's exhibiting right now is because she actually understands the severity of what she did to these living creatures. You can't come in here and do victim impact statements or tell you what they want to see happen. But thankfully, we have the dog wardens that can do that and so that's all I'm going to say.

{¶ 7} The court ordered the probation department to complete a presentence-investigative report ("PSI"). The court held the sentencing hearing in April 2024. Most of the hearing concerned the issue of restitution to the animal shelter that cared for the seized animals. After the restitution portion of the hearing, the court heard argument in mitigation by Murphy's counsel, and a brief statement from Murphy in allocution.

{¶ 8} The court then stated the following before imposing sentence:

This is -- really a terrible case. I know you tell me, Ms. Murphy, that you're a religious person, and I don't doubt that when you started this thing that you had laudable ideas in mind. But they go out there and they find these awful conditions. They're dead, diseased, starved, and neglected dogs. The deputy says it was the worst conditions she'd ever experienced. You had food there, and while it was available, you didn't make it accessible to the animals. Some of them had been there so long that they were --- that they had, essentially, just dissolved. Some you had placed in the freezers that weren't -- working.

- 3 -

You obviously knew that there were dogs dying out there, and you didn't do anything about it.  I mean, just the most horrible case of neglect in this case.  And if you're a person who believes in God, these are God's creatures.  And I just I can't walk past this.  So like I said, I just find that you're not amenable to available community-controlled sanctions.

{¶ 9}   The court imposed consecutive sentences of 12 months in prison on counts 1, 2, 3, and 4.  The court imposed a 6-month consecutive sentence on Count 5.  The court imposed concurrent sentences on the remaining counts.  In the aggregate, the court imposed a sentence of 54 months in prison.  The court also ordered restitution in the amount of $16,221.88 to the animal shelter.  Finally, the court prohibited Murphy from having companion animals.

{¶ 10} Murphy appealed, raising two assignments of error.

## II. Law and Analysis

### A. Consideration of the R.C. 2929.11 and 2929.12 Factors

{¶ 11} Murphy's first assignment of error states:

THE TRIAL COURT FAILED TO ADEQUATELY CONSIDER THE FACTORS IN R.C. §2929.11 AND §2929.12 AT SENTENCING.

{¶ 12} Murphy argues that the trial court failed to consider or "overlooked" various factors set forth in R.C. 2929.11 and 2929.12 that weighed in her favor.  She contends that she had no prior offenses, was employed prior to the charges, and was remorseful.  She argues that the aggravating factors set forth in R.C. 2929.12(B) did not apply to her conduct.  And she contends that none of the recidivism factors set forth in R.C. 2929.12(D) and (E), indicated that she was likely to recidivate.  In essence, Murphy is asking this court to reweigh the evidence relevant to the R.C. 2929.11 and 2929.12 factors in her favor and order her resentenced more leniently.

## 1. Standard of Review – Felony Sentencing Appeals[1]

{¶ 13} R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals. *State v. Day*, 2021-Ohio-164, ¶ 6 (12th Dist.). As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 14} R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). *State v. McIntosh*, 2023-Ohio-4022, ¶ 50 (12th Dist.). Therefore, R.C. 2953.08(G)(2)(a) does not permit this court to modify or vacate a sentence based on a lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *Id*.

{¶ 15} Instead, our review, insofar as it concerns arguments relating to R.C. 2929.11 and 2929.12, is whether Murphy has presented clear and convincing evidence that her sentence is "otherwise contrary to law" under R.C. 2953.08(G)(2)(b). *State v. Iverson*, 2023-Ohio-1601, ¶ 40 (12th Dist.)

{¶ 16} "A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range." *State v. Clinger*, 2022-Ohio-3691, ¶ 39 (12th Dist.). "Although a court imposing a felony sentence must consider the purposes of felony

---

1. Murphy presents no argument in this appeal concerning her sentences on the misdemeanor counts.

sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, 'neither R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings on the record.'" *State v. Bryant*, 2022-Ohio-1878, ¶ 20, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 20.

## 2. Analysis

{¶ 17} Before imposing sentence, the trial court stated that it had considered the factors set forth in R.C. 2929.11 and 2929.12. The court also stated that it considered the statements of counsel and Murphy, the evidence admitted at the restitution or reimbursement portion of the hearing, and the PSI.

{¶ 18} The prison terms on the first eight counts, all fifth-degree felonies, were six or twelve months in prison, which is within the permissible statutory range. R.C. 2929.14(A)(5). "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry . . . ." *Jones*, 2020-Ohio-6729 at ¶ 42. Our review need go no further. *State v. Jennings*, 2024-Ohio-383, ¶ 34 (12th Dist.) We overrule Murphy's first assignment of error.

## B. Consecutive Sentences

{¶ 19} Murphy's second assignment of error states:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT SENTENCED HER TO CONSECUTIVE SENTENCES IN THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS ON COUNTS TWO, THREE, FOUR AND FIVE.

{¶ 20} Murphy contends that the record does not support the trial court's consecutive sentence findings. Murphy argues that consecutive sentences were

disproportionate to the seriousness of the crime and to the danger she poses to the public.

**1. Applicable Law**

**a. Required Findings for Consecutive Sentences**

{¶ 21} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry . . . ." *State v. Bonnell*, 2014-Ohio-3177, syllabus. That statute states:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 22} Stated more simply, to impose consecutive sentences, a sentencing court must find (1) "that the consecutive service is necessary to protect the public from future crime or to punish the offender[,]" (2) "that consecutive sentences are not disproportionate

to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" and (3) that at least one of the three conditions described in R.C. 2929.14(C)(4)(a), (b), or (c) apply. R.C. 2929.14(C)(4).

### b. Standard of Review -- Felony Sentencing Appeals

{¶ 23} As stated previously, R.C. 2953.08(G) defines the standard of review for felony-sentencing appeals. *Day*, 2021-Ohio-164 at ¶ 6. As applicable here, R.C. 2953.08(G)(2) provides:

> The appellate court may take any action authorized by this division if it *clearly and convincingly* finds either of the following:
>
> *(a) That the record does not support the sentencing court's findings under division* (B) or (D) of section 2929.13, division (B)(2)(e) or *(C)(4) of section 2929.14*, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

(Emphasis added.)

{¶ 24} "The consecutive sentence statute, R.C. 2929.14(C)(4), is one of the relevant statutes specifically mentioned in R.C. 2953.08(G)(2)." *State v. Richey*, 2023-Ohio-336, ¶ 12 (12th Dist.). "Thus, there are two ways that a defendant can challenge consecutive sentences on appeal." *State v. Shiveley*, 2022-Ohio-4036, ¶ 7 (12th Dist.). "The defendant can argue either that the imposition of consecutive sentences is contrary to law because the trial court failed to make the necessary consecutive sentence findings required by R.C. 2929.14(C)(4), or that the record does not support the trial court's consecutive sentence findings made under R.C. 2929.14(C)(4)." *Richey* at ¶ 12, citing *Shiveley* at ¶ 7.

{¶ 25} The Ohio Supreme Court has stated the following standard of review applicable to our review of consecutive sentence findings:

The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record.

*State v. Gwynne*, 2023-Ohio-3851, ¶ 5.

### 2. Analysis

{¶ 26} In this appeal, Murphy does not dispute that the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4). Murphy therefore concedes that the trial court's decision to impose consecutive sentences was not clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b).

{¶ 27} Instead, Murphy argues—pursuant to R.C. 2953.08(G)(2)(a)—that the record does not support the trial court's consecutive sentence findings under R.C. 2929.14(C)(4). Specifically, Murphy challenges the trial court's findings "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶ 28} Based upon our review of the record on appeal, including the record of the sentencing hearing and the PSI, we do not find that the trial court's finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" is clearly and convincingly not supported by the record.

{¶ 29} In summary, the PSI reflected that in July 2023, sheriff's deputies responded to Murphy's property for a welfare check on dogs. They found that Murphy was running an animal rescue called "Helping Hands for Furry Paws." The PSI stated that deputies viewed 90 dogs, including 5 litters of nursing puppies. All dogs located were living in horrific conditions and some of the cages contained as many as 7 dogs. All dogs were covered in feces and were without water and air conditioning.

- 9 -

{¶ 30} In addition, deputies discovered approximately 30 deceased dogs, most in refrigerators and freezers, some of which were non-working. Some of the bodies were decomposed or liquified and were unable to be removed. Eighteen deceased dogs were identifiable and able to be seized. The PSI described the circumstances to the individual counts of which Murphy pled guilty as follows:

> Count 1: The offender starved to death dog A0053847545.
>
> Count 2: The offender starved to death dog A0053847571.
>
> Count 3: The offender starved to death dog A0053847541.
>
> Count 4: The offender starved to death dog A0053845664.
>
> Count 5: The offender failed to get medical treatment for Homie, dog A0053845717, who had open wounds over his body.
>
> Count 6: The offender failed to get medical treatment for Alvin, dog A0053845777, who had a large mass on his abdomen and infected eyes.
>
> Count 7: The offender failed to get medical treatment for Bailey, dog A0058345760, who had chronic ear infections in both of her ears.
>
> Count 8: The offender failed to care for Gargoyle, dog A0058346309, who had mange, hair loss and coughing.
>
> Count 17: The offender was starving Miranda AKA Skinny Mama, dog A0053845724, who was at the Eck residence, higher level.
>
> Count 18: The offender failed to provide food and water to the three dogs at the Eck residence, lower level.
>
> Count 19: The offender failed to provide food and water to twenty-three dogs and puppies found caged in the Mosiman garage.
>
> Count 20: The offender failed to provide food and water to eight dogs found in the Mosiman kitchen.

{¶ 31} Murphy contends that consecutive sentences were disproportionate to the

seriousness of her conduct. However, her argument does not focus on her conduct, but instead focuses on herself. She argues that she was 61 years old at the time of the offenses and had "never been in trouble" prior to these offenses. While she admits that what happened to the dogs in her care was "horrible," she states that she was "overwhelmed" when she took on "rescuing the dogs." She notes she was going through a divorce and suffering from medical and psychological issues.

{¶ 32} Murphy's age, lack of a criminal record, and her personal issues do not negate the seriousness of her conduct. Murphy's conduct resulted in numerous dogs suffering "serious physical harm," which resulted in death or the need for urgent medical care. The living environment that Murphy provided for these animals was described as the "worst conditions" a deputy dog warden had ever witnessed. The pain, suffering, and serious physical harm Murphy inflicted on numerous animals in her care was "serious" and was not disproportionate to the consecutive sentences she received.

{¶ 33} Moreover, there were resources available to Murphy if she could not care for these dogs and was as "overwhelmed" as she claims. The record reflects that she refused assistance from the dog wardens when it was offered. The record indicates that one basis she gave for refusing help was that she would be unable to generate money from selling the puppies of the adult dogs, which belies her claim that mental or psychological strains were the reason for her conduct.

{¶ 34} Murphy next argues that consecutive sentences were disproportionate to the danger she poses to the public. She argues that her only offenses were against dogs and humans were not harmed by her conduct. She again highlights that she had no criminal record prior to these charges.

{¶ 35} We disagree. While no humans were physically harmed by Murphy's conduct, we cannot find that the trial court's finding with respect to the danger Murphy

posed to the public was clearly and convincingly not supported by the record. Murphy's conduct harmed the public due to the detrimental effect on society from the mere knowledge that Murphy caused serious physical harm to so many vulnerable dogs. The General Assembly has enacted special protections for certain animals that the public views differently from other animals, and as deserving of special protection. *See* R.C. 959.131 (prohibiting "serious physical harm" to companion animals, which are defined as animals "kept inside a residential dwelling" and "any dog or cat regardless of where it is kept," and excluding "livestock or any wild animal"); *see also State v. Kyles*, 2024-Ohio-5038, ¶ 15 (holding that "all dogs and cats are included [in R.C. 959.131's protections] regardless of whether they are kept in a residential dwelling"). In other words, the public perceives a unique harm when dogs are harmed; it does not perceive this type of harm when an anthill is stamped underfoot. And Murphy's conduct toward the dogs in this case was nightmarish. Murphy starved or neglected numerous dogs to the point they died and then hid their bodies in refrigerators and freezers, which shows she was aware of the wrongness of her conduct and was attempting to conceal her conduct. The remaining dogs were in the process of being starved to death or seriously neglected, and otherwise were living in the most deplorable of conditions. There is no doubt that these animals suffered greatly. They relied on Murphy to provide food, water, shelter, and other care. Murphy had dog food and water available for these animals but withheld it.

{¶ 36} In sum, we defer to the trial court's factual findings regarding consecutive sentences. *Gwynne*, 2023-Ohio-3851 at ¶ 5. We do not find that those findings are clearly and convincingly not support by the record. *Id*. To the contrary, we find overwhelming support for the trial court's findings. We overrule Murphy's second assignment of error.

### III. Conclusion

{¶ 37} Murphy has failed to establish error in the imposition of her sentence. The trial court properly considered R.C. 2929.11 and 2929.12 and her sentence was not contrary to law. The trial court's factual findings as to consecutive sentences were not clearly and convincingly not supported by the record.

{¶ 38} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.