[Cite as *State v. Miller*, 2023-Ohio-1600.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-008 |
| | : | O P I N I O N |
| - vs - | | 5/15/2023 |
| | : | |
| BENJAMIN MILLER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2021-2212

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Kroener Hale Law Firm, and Sloan Thacker, for appellant.

**BYRNE, J.**

{¶ 1} The Brown County Court of Common Pleas found Benjamin Miller guilty of two counts of felonious assault. Miller appealed his conviction. For the reasons discussed below, we affirm the conviction.

**I. Facts and Procedural Background**

{¶ 2} In October 2021, a Brown County grand jury indicted Miller on two counts:

Count One, felonious assault (causing serious physical harm), a violation of R.C. 2903.11(A)(1); and Count Two, felonious assault (use of a deadly weapon), a violation of R.C. 2903.11(A)(2). Both offenses are second-degree felonies. The indictment arose from allegations that Miller came to the victim's residence, engaged the victim in a fight, and used a knife or box cutter to cut the victim.

{¶ 3} The matter proceeded to a bench trial. Jimmy Bowling – the victim – testified. Several witnesses to the fight testified, including Genista Bowling (Jimmy's wife), Shannya Green (Genista's daughter), and Brian Graves (Jimmy and Genista's neighbor) (referred to by the nickname "Dog"). Several law enforcement officers who responded or investigated also testified.

{¶ 4} There are very few facts in dispute, and Miller does not challenge the evidence supporting his conviction. So rather than describing each of the individual testimonies and exhibits, we will briefly summarize the evidence introduced at trial.

**A. Summary of the Trial**

{¶ 5} At the time of the incident, Miller was in a relationship with Shannya. Approximately two weeks prior to the incident, Miller sold Jimmy a vehicle. Miller sold the vehicle with the caveat that Jimmy would remove the vehicle's gear shifter and return it to him.

{¶ 6} On the evening of October 11, 2021, Miller contacted Jimmy and demanded that Jimmy return the gear shifter to him that evening. Jimmy told Miller that he did not have time to remove the shifter that day, but he offered to bring it to Miller the next day. This response displeased Miller and the record indicates that the two exchanged aggressive and threatening text messages. Miller threatened that he would come over to Jimmy's house and beat Jimmy up. Jimmy told him to "come get some" and "you know where I live."

{¶ 7} Later that evening, Miller arrived in a vehicle at Jimmy and Genista's house

and pulled into the driveway. Shannya was with Miller. Miller proceeded to honk his horn, flash his lights, and scream. He behaved in this manner for approximately 15 minutes.

{¶ 8} Jimmy was in the backyard of the home with Genista and Dog. They attempted to ignore Miller's antics. Genista finally walked down the driveway and told Miller to leave. According to Miller, Genista physically attacked him while he was sitting in the vehicle. Genista disputed hitting Miller.

{¶ 9} During their interaction, Miller called Genista a derogatory phrase for an overweight person. After hearing Miller insult his wife, Jimmy approached the vehicle, removed his shirt, and invited Miller to fight. Miller then got out of his vehicle. What happened next is in dispute.

{¶ 10} According to on-scene witnesses, after exiting his vehicle, Miller began fighting with Jimmy. According to Jimmy and Genista, Miller emerged from the vehicle with a knife or box cutter and waved it around, threatening to cut Jimmy's throat. Miller then proceeded to chase Jimmy around the yard with the knife. Jimmy told Miller that he was risking prison time using a knife and that he should put the knife away and "fight like a man." This reasoning persuaded Miller and he put the knife or box cutter away. Miller then punched Jimmy in the mouth. The strike had limited effect. Jimmy – who the record reflects is a much larger man than Miller – then punched Miller back once, causing Miller to fall to the ground and come to rest in a "fetal position." Jimmy then continued to punch Miller while he was on the ground.

{¶ 11} According to Jimmy, while he was pummeling Miller, Miller again wielded the box cutter and started slashing at Jimmy's legs. Several of the slashes caused superficial

cuts. But one slash caused a large, deep laceration. Jimmy began bleeding profusely.[1] Jimmy then yelled at Genista to go to the house. Jimmy got off Miller. Miller then ran to his vehicle and left the scene with Shannya.

{¶ 12} Law enforcement pulled Miller over and arrested him shortly after the incident. Photographs taken during the arrest show that Miller had blood on both hands, his forearm, and his forehead. The arresting officer searched the vehicle for a knife but found no knife or other weapon in the vehicle or elsewhere.

{¶ 13} A detective interviewed Miller and recorded the interview. The state played the interview at trial. In the interview, Miller admitted going to Jimmy's house. He claimed that Genista and Jimmy assaulted him while he was still sitting in the vehicle, by attacking him through the vehicle's window. Miller was adamant that he never got out of the vehicle.

{¶ 14} Upon further questioning, and after the detective informed Miller that witnesses had observed him get out of the vehicle, Miller conceded that he had in fact left the vehicle. He stated that when he exited the vehicle, he was promptly "beat to the ground" by Jimmy and Genista. He then got up and got back into his vehicle and left. He denied cutting Jimmy or having any knife on his person.

### B. Closing Arguments

{¶ 15} During closing argument, the state summarized the testimony of all the witnesses and argued that the evidence was overwhelming that Miller was guilty of both counts of felonious assault. In the defense's closing argument, Miller's counsel highlighted the fact that Miller had never wavered in denying that he brought a box cutter to the fight and in denying that he had used a knife to injure Jimmy. Miller's counsel argued that it was

---

1. Medical records indicate that EMS responders had to place a tourniquet on Jimmy's leg to stem the bleeding. Medical professionals used twenty-five sutures to close the wounds. There is no dispute in this case that the injuries suffered by Jimmy constituted "serious physical harm."

more conceivable that something sharp in Jimmy's yard caused Jimmy's injury. Miller's counsel noted that there was no evidence that anyone had searched the yard for any sharp objects that might have caused the injury.

## C. The Verdict

{¶ 16} The trial court found Miller guilty on both counts of felonious assault. Miller appealed, raising a single assignment of error.

## II. Law and Analysis

{¶ 17} Miller's sole assignment of error states:

APPELLANT'S DUE PROCESS RIGHT TO LEGAL COUNSEL WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 18} Miller contends that he was denied the effective assistance of counsel because counsel argued in closing that Jimmy might have been injured by a sharp object in the yard but failed to provide any evidence to support this suggestion of an alternative explanation for Jimmy's injury. Miller also argues that defense counsel failed to investigate the yard to determine if there were any sharp objects present.

## A. Legal Standard

{¶ 19} To prevail on an ineffective assistance of counsel claim, Miller must establish "(1) deficient performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different." *State v. Taylor*, 12th Dist. Fayette No. CA2018-11-021, 2019-Ohio-3437, ¶ 16, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984) and *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. The failure to demonstrate either prong is fatal to an ineffective assistance of counsel claim. *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 54. In considering an ineffective assistance claim, an "appellate

court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective." *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 54.

## B. Analysis

{¶ 20} Miller complains that defense counsel provided ineffective assistance by suggesting that there might have been something sharp in the yard that caused Jimmy's injuries when defense counsel also "failed to review the crime scene, or present any evidence during trial of possible items in the yard that could have caused injury." With no citation to legal authority, Miller states that when defense counsel presents an alternative explanation for injuries, counsel must "review the crime scene and provide evidence of the alternative cause of the injury." Miller argues that the failure to do so falls below the level of care and professionalism necessary to provide effective assistance. In addition, Miller argues that if defense counsel had presented evidence of a sharp object in the yard that could have caused Jimmy's injury, then the factfinder may not have concluded that the state proved its case beyond a reasonable doubt.

{¶ 21} The presentation of closing argument involves trial strategy. *State v. Smith*, 12th Dist. Clermont No. CA2021-02-009, 2022-Ohio-1984, ¶ 104. An appeals court reviews matters of trial strategy with a strong presumption that counsel's conduct falls within the wide range of professional assistance. *Id*.

{¶ 22} Upon review, we do not find that Miller has demonstrated that his counsel provided deficient representation. Initially, we note that this was not a close case. Jimmy testified that he saw Miller with a knife or box cutter and that Miller cut him with that weapon. Genista testified to observing Miller swinging a knife and threatening Jimmy. She observed Miller making slashing movements with his arm after Jimmy knocked him to the ground. Dog heard Jimmy say something about "swinging a knife" and then saw Jimmy come back

to the porch limping, saying "He cut me." Thus, two witnesses provided testimony corroborating Jimmy's first-person account that Miller cut him. Furthermore, there is no dispute that Jimmy suffered superficial cuts and one significant laceration. Miller had blood on his hands, forearm, and forehead when police apprehended him. On the other hand, Miller lied during his police interview and his version of the facts was inconsistent with the version of events offered by Jimmy, Genista, and Dog. In sum, the evidence of Miller's guilt was overwhelming.

{¶ 23} Defense counsel's suggestion that there might have been something sharp in the yard was an attempt to create doubt in a case in which the state offered overwhelming evidence of guilt. Defense counsel was not ineffective for attempting to offer an alternative, plausible version of facts that would have allowed the factfinder to find Miller not guilty. *State v. Wilkins*, 64 Ohio St.2d 382, 391 (1980) (holding that defense counsel's "improvisation" during closing argument to present a plausible alternative version of the facts did not constitute ineffective assistance). Here, defense counsel chose to highlight the absence of evidence concerning what was in the yard to cast doubt upon the state's case. Counsel's choice was a matter of trial strategy and was within the wide range of professional assistance and was not defective performance. *Smith* at ¶ 104.

{¶ 24} In any event, defense counsel's suggestion about the possibility of an unknown sharp object in the yard was not without some evidentiary basis. There was evidence that Miller chased Jimmy around the yard at the beginning of the fight. Conceivably, the injury from an unknown sharp object could have occurred during this portion of the fight. And defense counsel asked questions to draw out that there was blood in the yard and that the investigating detective had not looked for blood in the yard. The suggestion here was that the injury occurred in the yard and that the detective had not thoroughly searched the yard and therefore may have missed finding a sharp object that

caused Jimmy's injuries.

{¶ 25} Defense counsel also asked the detective whether he recalled Dog stating that he had gone out into the yard looking for the weapon. The apparent point of this question may have been to suggest that Dog removed the sharp object. Thus, defense counsel's suggestion was loosely based on some evidence and questioning at trial.

{¶ 26} Finally, Miller's argument that the outcome of his trial may have changed if his defense counsel had investigated the yard and found something sharp is completely speculative. Speculation is not sufficient to establish ineffective assistance of counsel. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, ¶ 119. And in fact, there is nothing in the record to suggest that counsel did not investigate the yard. Therefore, even if Miller had demonstrated that his trial counsel provided deficient performance (which he did not), Miller has not demonstrated prejudice. So, for this additional reason, he cannot establish ineffective assistance of counsel.

{¶ 27} For these reasons, we overrule Miller's sole assignment of error.

### III. Conclusion

{¶ 28} Miller has failed to demonstrate that he received ineffective assistance of counsel.

{¶ 29} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.