[Cite as *State v. Brotherton*, 2024-Ohio-5045.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-01-014 |
| | : | O P I N I O N |
| - vs - | | 10/21/2024 |
| | : | |
| FRED T. BROTHERTON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-04-0442 and CR2023-06-0840

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Christopher P. Frederick, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Fred T. Brotherton, appeals from the decision of the Butler County Court of Common Pleas revoking his intervention in lieu of conviction ("ILC") after he was found guilty of violating the terms and conditions of ILC. For the reasons discussed below, we affirm the trial court's decision.

{¶ 2} On April 6, 2022, in Case No. CR2022-04-0442, Brotherton was indicted on

two counts of nonsupport of dependents, felonies of the fifth degree. Brotherton was released on a recognizance bond. However, after he failed to appear for a hearing, his bond was revoked and a capias was issued for his arrest. He was subsequently indicted in Case No. CR2023-06-0840 on one count of failure to appear, a felony of the fourth degree.

{¶ 3} Brotherton filed an application for ILC under R.C. 2951.041 in both cases and asked to be placed on an ILC treatment plan. Pursuant to the ILC statute, R.C. 2951.041(A)(1), if an offender is charged with a crime, and the trial court has reason to believe that drug or alcohol use was a factor leading to the commission of that crime, "the court may accept, prior to the entry of a guilty plea, the offender's request for intervention in lieu of conviction."

{¶ 4} The trial court held a hearing on the matter on October 5, 2023. During this hearing, the state informed the trial court that it had reached a plea agreement with Brotherton, wherein Brotherton would plead guilty to failure to appear in Case No. CR2023-06-0840 and guilty to one count of nonsupport of dependents in Case No. CR 2022-04-0442 in exchange for his placement on ILC and the state dismissing the other count of nonsupport. The trial court noted that it had received a "recommendation from DeCoach [Rehabilitation], recommending partial hospitalization" for Brotherton.[1] The trial court therefore granted Brotherton's application for ILC in both Case No. CR 2022-04-0442 and Case No. CR2023-06-0840. The court engaged Brotherton in a Crim.R. 11(C) plea colloquy before accepting Brotherton's guilty pleas. The trial court then stayed all criminal proceedings pending Brotherton's compliance with the terms of his ILC plan. Brotherton was ordered to comply with the terms and conditions imposed upon him by

---

1. DeCoach Rehabilitation provides addiction recovery services in the Butler County area.

R.C. 2951.041 and was placed under the supervision of the probation department for three years. The court further ordered that Brotherton "be required to engage in and successfully complete and follow all the requirements, as well as the aftercare requirements, of DeCoach partial hospitalization treatment" as part of his ILC plan. The trial court warned Brotherton that if he violated the terms and conditions of his ILC, he would be facing up to 30 months in prison, comprised of up to 12 months in prison for nonsupport and up to 18 months in prison for the failure to appear, if be run consecutively to one another.

{¶ 5} On October 18, 2023, the probation department filed a notice with the trial court alleging Brotherton had violated the terms and conditions of his ILC treatment plan. The notice alleged Brotherton had violated ILC in the following manner:

> Rule 14: On 10/10/2023, the offender received an updated assessment from DeCoach Rehabilitation. Upon reassessing, it was determined that the offender did not meet the criteria for any of their programs and was not recommended any treatment. Thus, he is unable to successfully complete DeCoach Partial Hospitalization and Aftercare and comply with the conditions of his Intervention in Lieu.

{¶ 6} On October 20, 2023, a probable cause hearing on the alleged violation was held before a magistrate. The magistrate found probable cause that Brotherton had violated ILC and remanded him into custody.

{¶ 7} On November 9, 2023, the trial court held an ILC revocation hearing. At the beginning of the hearing, the following discussion occurred:

> THE COURT: What is your client's position with the alleged ILC violation? It looks like they're alleging a Rule 14 violation in both cases.
>
> [Defense Counsel]: As a condition of ILC, he was to enter and complete DeCoach. We acknowledge that that didn't happen. There is some –

> [Brotherton]: Discrepancy.
>
> [Defense Counsel]: – disagreement on why that didn't happen, but that is accurate, that it was not completed. So he does admit that he did not complete DeCoach.
>
> [Brotherton]: I tried to stay. They wouldn't let me stay.
>
> THE COURT: Well, for the record, the allegations are that you were placed – the Defendant was placed on intervention in lieu at his motion, at his request, at a hearing that occurred on October 5 of this year. Oh, about a month ago. On October 6, a representative of DeCoach reached out to the probation officer to let her know the offender had just admitted to their medical doctor that he had lied to the Court to get out of jail and does not do drugs. Therefore, he did not qualify for inpatient, partial hospitalization with housing services.

{¶ 8} Brotherton disputed the accuracy of the court's statement, claiming that was "not exactly correct." Brotherton denied that he had made such a statement to DeCoach. Rather, Brotherton claimed that he had merely told DeCoach that he "didn't need no prescriptions" which prompted DeCoach to ask why he was at the facility. When he told DeCoach that he had been arrested for not paying child support, DeCoach told him he "needed to be at home working to pay [his] child support." Brotherton claims he was told to report to his probation officer, to make a payment towards his child support obligation, and then instructed to undergo another assessment at DeCoach. He complied and following the latter assessment, was told that "at best, I would need a relapse prevention course, and then told me to – or I was supposed to report to my probation on Thursday after that, which I did, and I was arrested on violation of not being there."

{¶ 9} The trial court questioned defense counsel about what had occurred at DeCoach.

> THE COURT: Let me ask counsel. Did your client say anything akin to the medical personnel at DeCoach, or treatment personnel at DeCoach, to the effect that he lied to the Court to get out of jail and does not do drugs?

- 4 -

[Defense Counsel]: He denies saying that to the treatment provider. I think what he acknowledges saying is what he said today in court, that in his estimation, he does not need medication.

THE COURT: Well, you think we should subpoena all those doctors and have a hearing? Of course, if they verify what's being said, consequences could be –

[Brotherton]: I understand what you're saying.

THE COURT: But so if you want to tell me that that didn't happen, then I don't think it's very fair for me to sentence you to incarceration.

[Brotherton]: No.

THE COURT: Because I will take you at your word. But if we bring witnesses in here, and people with credentials, and doctors, and they don't have an ax to grind, and they come here and tell me that you essentially defrauded the Court and defrauded the treatment system and defrauded the taxpayers, then the consequences are going to be much worse. So why don't you take a minute, consult with your attorney, and if you truly didn't say this, and this is all just fabrication, and you're just caught up in some big, horrible lie, then I'll give you the benefit of the doubt.

And if it's true, we'll keep you on intervention in lieu. I'll find a different treatment provider.

But, if it's true what they said, and that you made this up, and you defrauded this Court, and you lied – what have you got here? An F-5 and an F-4. I mean, there's a very good chance you're prison eligible. You could serve 30 months in prison.

So I think it's best that you and your attorney consult. And if you want to admit to the violation, then don't do it halfway. You either tell me, I did this, I made a mistake, but I'm not going to feel bad if I sentence you to jail or incarceration when you're sitting there telling me, I didn't do that. I didn't say that. I didn't tell them that I lied about my drug problem just to get out of jail.

[Brotherton]: I didn't say – I didn't say that either, sir.

THE COURT: So you better get your story straight.

{¶ 10} Brotherton then apologized to the court for upsetting it. The court stated it

- 5 -

was not upset and questioned defense counsel and Brotherton as to how they wished to proceed.

> THE COURT:  Well – so is your client admitting the violation and wishes to proceed at this very moment?
>
> [Brotherton]:  I guess so.  Yeah.  Yeah.  I don't know what the –
>
> [Defense Counsel]:  He's indicating, yes.  He does admit the violation at this time.
>
> THE COURT:  Court will accept the admission.  Make a finding the Defendant's violated the terms and conditions of his intervention in lieu.  The Court will terminate his intervention in lieu with respect to both cases.
>
> [Brotherton]:  Both cases?
>
> THE COURT:  All conversations regarding this case are off the table.  You understand that?
>
> [Defense Counsel]:  I understand, Your Honor.
>
> THE COURT:  Very good.  Mitigation, please.

{¶ 11} After accepting Brotherton's admission to violating his ILC plan, the court revoked Brotherton's ILC.  The court then proceeded to sentencing, where it heard from defense counsel, Brotherton, and the state.  Defense counsel noted Brotherton had mental health issues and requested the court "show some mercy" in imposing a sentence.  Brotherton offered an explanation for why he had not made payments on his child support obligation.  The court then questioned Brotherton, "Is there anything you wish to say about defrauding the Court . . . with your suggestion that you had a substance abuse problem that you were just alleging, in order to . . . get out of jail. . . ."  Brotherton denied that he intended to defraud the court.

> [Brotherton]: I was trying to keep from getting a felony, sir.  I'm 43 years old, and I don't have a felony.  You told me that my attorney, that I didn't want to go forward with my case at the time, was the best attorney, and she was suggesting this, and

had suggested this over and over.

THE COURT: She suggested that you lied at treatment?

[Brotherton]: And the, when I talked to the DeCoach – no.

[Defense Counsel]: No.

[Brotherton]: That I did the in lieu of conviction.

THE COURT: Yeah. Because I've known her quite some time, and I don't think she would ever counsel a client to lie –

[Brotherton]: To do that.

THE COURT: – to a treatment provider.

[Brotherton]: To do the L—ILC.

THE COURT: Well –

[Brotherton]: And she suggested I needed treatment.

THE COURT: – I don't think there's any problem with you doing the intervention in lieu. The problem is when you lie to the treatment providers, and you, essentially, lied to this Court, and –

[Brotherton]: I apologize. I –

THE COURT: Yeah. Well, I –

[Brotherton]: – I just was – I was just trying to get –

THE COURT: – I'll stop there. That's where the problem occurred.

[Brotherton]: I – I apologize. I was just trying to get rid of the felony.

{¶ 12} After considering defense counsel's and Brotherton's statements, reviewing Brotherton's presentence investigative report, and noting Brotherton's extensive misdemeanor record and his behavior since his April 2022 arrest for nonsupport of dependents, the court found that Brotherton was not amenable to community control. The court sentenced Brotherton to 11 months in prison on his nonsupport of dependents

conviction in Case No. CR2022-04-0442 and sentenced him to 17 months in prison on the failure to appear conviction in Case No. CR2023-06-0840. The court ordered that Brotherton's sentences be served consecutively, for an aggregate prison term of 28 months.

{¶ 13} Brotherton appealed, raising three assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} MR. BROTHERTON'S DUE PROCESS RIGHTS WERE VIOLATED DURING HIS COMMUNITY CONTROL HEARING [SIC].

{¶ 16} In his first assignment of error, Brotherton argues his due process rights were violated during his "community control violation hearing" as he was not provided with the opportunity to confront and cross-examine witnesses against him or to present evidence and witnesses on his own behalf. Brotherton further contends the trial court failed to comply with Crim.R. 32.3 in revoking his community control.

{¶ 17} As an initial matter, we note that Brotherton was not subjected to community control sanctions or community control revocation. Rather, he had been placed on ILC and was subject to revocation of ILC. Community control and ILC are not synonymous. *State v. Brovey*, 2020-Ohio-964, ¶ 10 (12th Dist.). "Under R.C. 2929.01(DD) community control is a 'sanction' that exists as a penalty or punishment for an offense. To the contrary, ILC is not a punishment, it is 'an opportunity for first time offenders to receive help with their dependency without the ramifications of a felony conviction.'" *Id.*, quoting *State v. Ingram*, 2005-Ohio-1967, ¶ 13 (8th Dist.).

{¶ 18} ILC is governed entirely by R.C. 2951.041. While an ILC plan may include "terms and conditions similar to community control sanctions" and the offender is placed under the supervision of the probation department, "the offender is not actually 'subject to a community control sanction' during intervention." *Id.* at ¶ 12, quoting *State v. Trimpe*,

2019-Ohio-3017, ¶ 24. As a result, Crim.R. 32.3, which governs the revocation of community control, is not applicable to the revocation of ILC. *See Ingram* at ¶ 17. Similarly, Crim.R. 11(C), which "'mandates certain requirements with which the trial court must comply prior to accepting a guilty plea or no contest plea to a felony offense,'" does not apply to an ILC revocation hearing. *State v. Coffman*, 2015-Ohio-2990, ¶ 13 (12th Dist.), quoting *State v. Orr*, 2009-Ohio-5515, ¶ 23 (11th Dist.). Rather, "R.C. 2951.041(F) provides the procedural framework that is to occur at an ILC revocation hearing." *Id.*

{¶ 19} Pursuant to R.C. 2951.041(F),

> If the court grants an offender's request for intervention in lieu of conviction and the offender fails to comply with any term or condition imposed as part of the intervention plan for the offender, the supervising authority for the offender promptly shall advise the court of this failure, and the court shall hold a hearing to determine whether the offender failed to comply with any term or condition imposed as part of the plan. If the court determines that the offender has failed to comply with any of those terms and conditions, it may continue the offender on intervention in lieu of conviction, continue the offender on intervention in lieu of conviction with additional terms, conditions, and sanctions, or enter a finding of guilty and impose an appropriate sanction under Chapter 2929. of the Revised Code. . . .

The statute therefore requires the supervisory authority to report an offender's failure to comply with the ILC plan and further requires the trial court hold a hearing to determine if the offender failed to comply with the terms or conditions of the ILC plan. R.C. 2951.041(F). "[T]he hearing requirement of R.C. 2951.041(F) contemplates a proceeding comporting with the basic requirements of due process, namely, prior notice and a meaningful opportunity to be heard." *State v. Broadt*, 2014-Ohio-370, ¶ 8 (9th Dist.).

{¶ 20} Brotherton contends he was not afforded due process at the revocation hearing because he was not given a meaningful opportunity to be heard. Specifically,

Brotherton claims he was not given the opportunity to confront and cross-examine witnesses against him or to present evidence and witnesses on his own behalf. We find no merit to Brotherton's argument. The record reflects that Brotherton voluntarily entered an admission to violating Rule 14 of his ILC plan, admitting he was unable to successfully complete DeCoach partial hospitalization and aftercare. Brotherton entered this admission after consulting with his attorney and holding a discussion with the trial court judge wherein the trial court questioned Brotherton about whether he wanted to enter an admission or whether he wanted the court to "subpoena all those doctors and have a hearing." Brotherton had the opportunity to be heard on the violation, to have witnesses subpoenaed, to confront and cross-examine witnesses, and to present evidence on his own behalf. Instead of exercising these rights, he chose to enter an admission to violating Rule 14 of the terms and conditions of his ILC plan. Brotherton was therefore not denied due process at his ILC revocation hearing. His first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} MR. BROTHERTON'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 23} In his second assignment of error, Brotherton argues his trial counsel rendered ineffective representation as counsel failed to request a hearing on his ILC violation. Brotherton contends defense counsel should have "request[ed] a hearing to challenge the allegations that [he] falsified information regarding his drug addiction to evade incarceration."

{¶ 24} To prevail on his ineffective assistance of counsel claim, Brotherton must show that his trial counsel's performance was deficient and that he was prejudiced as a result. *State v. Harner*, 2020-Ohio-3071, ¶ 32 (12th Dist.); *Strickland v. Washington*, 466

U.S. 668, 687-688 (1984). Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Strickland* at 688. To show prejudice, Brotherton must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *Harner* at ¶ 32.

{¶ 25} "It is well established that trial tactics and strategies do not constitute a denial of effective assistance of counsel." *State v. Marshall*, 2024-Ohio-4445, ¶ 33 (12th Dist.). An appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective. *Strickland* at 689.

{¶ 26} Brotherton's ineffective assistance of counsel claim fails as he cannot demonstrate the deficiency prong of his ineffective assistance of counsel claim. The record reflects that defense counsel and Brotherton conferred with one another prior to the ILC revocation hearing. Counsel was well aware of the fact that Brotherton had denied telling employees at DeCoach that he had lied about having a drug problem to evade incarceration. Counsel had discussed the issue with Brotherton prior to the hearing and was present when the trial court questioned Brotherton about DeCoach's allegations.[2] Nonetheless, Brotherton wished to enter an admission to the Rule 14 violation and acknowledge that he was unable to successfully complete DeCoach partial hospitalization and aftercare, which was a condition of his ILC plan. Defense counsel was not ineffective for following Brotherton's directive as to his admission and defense at

---

2. Defense counsel and Brotherton had clearly discussed the reason the ILC violation had been brought. When first addressing the court at the revocation hearing, defense counsel noted, "As a condition of ILC, [Brotherton] was to enter and complete DeCoach. We acknowledge that didn't happen. There is some . . . disagreement on why that didn't happen, but that it's accurate that it was not completed. So he does admit that he did not complete DeCoach."

the ILC revocation hearing. *See State v. Combs*, 2014-Ohio-497, ¶ 50 (8th Dist.) (finding a defendant's trial counsel was not ineffective for following the defendant's directive in plea proceedings or in the sentencing phase of a capital case).

{¶ 27} Brotherton has also failed to establish the prejudice prong of his ineffective assistance of counsel claim. Brotherton wants us to speculate that if defense counsel had requested a continuance of the November 9, 2023 revocation hearing so that witnesses could be called, these witnesses would have offered testimony that proved he had not falsified information regarding his drug addiction to evade incarceration. However, there is nothing in the record to support Brotherton's claim. As this court has repeatedly recognized, "[a]n ineffective assistance of counsel claim cannot be supported by purely speculative evidence or argument." *State v. Hubbard*, 2024-Ohio-1315, ¶ 114 (12th Dist.), citing *State v. Miller*, 2023-Ohio-1600, ¶ 26 (12th Dist.). "Speculation is not sufficient to establish ineffective assistance of counsel." *Miller* at ¶ 26.

{¶ 28} As Brotherton cannot establish either the deficiency or prejudice prong of his ineffective assistance of counsel claim, his claim fails and his second assignment of error is overruled.

{¶ 29} Assignment of Error No. 3:

{¶ 30} MR. BROTHERTON'S CONSECUTIVE SENTENCES WERE UNLAWFUL.

{¶ 31} In his third assignment of error, Brotherton contends the trial court erred in imposing consecutive sentences.

{¶ 32} A felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) states that an appellate court may modify or vacate a sentence if the court finds "by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id*.

{¶ 33} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, syllabus. Specifically, the sentencing court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 34} Though a trial court must make the required findings at the sentencing hearing, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 35} In the present case, the trial court stated the following in imposing consecutive sentences:

Court will find that the presumption as to concurrent sentences, and – in this and every case, has been overcome. The Court will find that consecutive sentences in this case are necessary to adequately protect the public from future crime. And most importantly, punish this Defendant for the actions that I've already described, his behavior. Court will find that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public.

Furthermore, the Court will find that the Defendant committed the failure to appear offense while the Defendant was awaiting trial, or sentencing, or was under sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18. Furthermore, the Court will find the Defendant's criminal history, or the offender's history I should say, of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by this Defendant. And therefore the -0840 case will run consecutive to the -0442 case.

. . .

So the Court has made its findings in consideration of the aggregate term to be imposed. So the Court will make those findings in support of consecutive sentences. The Court is very concerned that this Defendant should use a program and a system that the state legislature, in their wisdom, and the courts have adopted to give people the opportunity to seek treatment. And to have lied and manipulated that system, just to get out of jail, I'm deeply concerned about that.

I'm deeply concerned that other people not engage in a similar pattern of conduct that thereby making the Court reluctant to want to grant, in other cases, intervention in lieu for people who are truly in need of substance abuse treatment or mental health treatment. And so that's why I think this Defendant's conduct, and his attitude towards intervention in lieu, and his lack of remorse is so egregious in this case. And it warrants the Defendant serving consecutive sentences.

The court incorporated its findings into Brotherton's sentencing entry.

- 14 -

{¶ 36} Brotherton concedes that the trial court made the required statutory findings at the sentencing hearing and in the sentencing entry to impose consecutive sentences. Nonetheless, he argues that "the record fails to show that consecutive sentences were necessary to protect the public from Mr. Brotherton's future crime or were proportionate to the danger Mr. Brotherton represented to the public."

{¶ 37} We find, contrary to Brotherton's assertions, that the record supports the trial court's consecutive sentencing findings. Though Brotherton did not have any prior felony convictions, the record reflects Brotherton has had a lengthy history of criminal misconduct, spanning nearly 25 years. Though Brotherton had claimed that "in 2008, [he] straightened [his] life up," the record demonstrates otherwise. Since 2008, he's had two domestic violence convictions, two convictions for driving under suspension, a conviction for obstructing official business, a conviction for possession of drug paraphernalia, and a conviction for violating a temporary protection order. At the time of sentencing, he had outstanding bench warrants for OVI, driving under suspension, and using a fictitious license relating to a 2017 incident in Middletown. Following his arrest and indictment on nonsupport of dependents in Case No. CR2022-04-0442, he was charged in one court with driving without a license and in another court was charged with driving under suspension. When he was released on bond in his felony nonsupport case, he failed to appear for a hearing, resulting in an additional felony charge of failure to appear. After lying and misleading the trial court into believing he had a drug problem which contributed to the nonsupport and failure to appear charges, Brotherton was placed on ILC. He then violated the terms of his ILC by failing to successfully complete ordered treatment at DeCoach.

{¶ 38} Brotherton's history of criminal conduct and his refusal to comply with previously imposed sanctions demonstrates that he poses a risk to the public. Prior

sanctions have been an insufficient deterrent to preventing Brotherton from committing crimes. To both protect the public from future crime and to punish Brotherton, consecutive sentences were necessary. The imposition of consecutive prison terms totaling 28 months was not disproportionate to the seriousness of Brotherton's conduct or the danger he poses to the public.

{¶ 39} Accordingly, we find that the trial court's consecutive sentencing findings made pursuant to R.C. 2929.14(C)(4) were not clearly and convincingly unsupported by the record. Brotherton's third assignment of error is overruled.

{¶ 40} Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.